UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-20684-CIV-LENARD/O'SULLIVAN

K.G., by and through his next friend,
Iliana Garrido, I.D., by and through his next friend,
Nilda Rivera, and C.C., by and through his next friend
Rachelle Crawford,

    Plaintiff,
v.

Elizabeth Dudek, in her official
Capacity as Secretary, Florida Agency for
Health Care Administration,

    Defendant.
_____/

**AMENDED JOINT PRETRIAL STIPULATION**

In response to the Court's June 9, 2011 Scheduling Order "The Order" (D.E. 30 at 3-4) and Local Rule 16.1(e)[1], the parties met by telephone conference on January 9, 2012 and submit the following joint pretrial stipulation.

1. **A concise statement of the case:**

Plaintiffs:

The case challenges the Defendant's rule excluding Medicaid coverage of any behavioral health services to treat children with autism spectrum disorders. This exclusion violates both the portions of the Medicaid Act pertaining to recipients under age 21 (commonly referred to as "EPSDT") and the provisions of the Act referred to as "comparability requirement." The Plaintiffs, all indigent children suffering from autism (also referred to as autism spectrum

---

[1] The Local Rule contains two additional statements not included in the Order, i.e. trial exhibits and trial witnesses. Those items will be listed on separate schedules attached as exhibits to this stipulation.

1

disorder or "ASD") have been prescribed a type of behavioral treatment called "Applied Behavioral Analysis on "ABA"). The Plaintiffs undisputed facts establish that the medical community considers ABA to be a proven and effective treatment for ASD, that it is medically necessary for each of the Plaintiffs, that ABA can be covered under section 1396d(a)(13) of the Medicaid Act, and that the Plaintiffs are suffering irreparable injury without it.

Plaintiffs also note that the cost of providing the requested relief is irrelevant as a matter of law.  *See, e.g., Tallahassee Memorial Regional Medical Ctr. v. Cook*, 109 F.3d 693, 704 (11th Cir. 1997) (rejecting the defendant's budgetary argument in Medicaid case).  However, since Defendant's statement of the case below includes the assertion that providing the requested ABA coverage would cost the state Medicaid plan approximately $300 million/year, Plaintiffs note that this is inconsistent with the testimony of Karen Chang, Defendant's fact witness, who testified that the total annual cost would be approximately $12.2 million, with the state share of that cost approximately $5.3 million/year.

<u>Defendant</u>:

Defendant is not required to provide ABA under the federal Medicaid statute because ABA does not fall under 42 U.S.C. Section 1396d(a)(6) or (13).  Even if ABA could be covered under the Medicaid Act, federal law permits states to exclude experimental services and Defendant has reasonably determined that ABA is experimental.  Because Defendant is not providing ABA to other Medicaid recipients, the comparability requirement is not implicated.  Because states have the authority to determine whether services are experimental, the Court's role in this case is only to decide whether Defendant's determination that ABA is experimental was reasonable.  The issue of whether ABA is experimental is not itself before the Court.

Defendant estimates that the cost of adding coverage of ABA to the Florida Medicaid program could be as high as $300,000,000 per year.

**2.   Basis of federal subject matter jurisdiction**

28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4)

**3.   List of all pleadings raising the issues**

1. Plaintiff's Amended Complaint, D.E. 63

2. Defendant's Answer to First Amended Complaint, D.E. 66

**4.   List of all pending motions**

1. Plaintiffs' Motion for Summary Judgment, D.E. 70

2. Defendant's Motion for Summary Judgment, D.E. 72

3. Defendant's Motion for Reconsideration and Dissolution of Preliminary Injunction, D.E. 82

4. Defendant's Motion to Disclose Expert Witnesses Out of Time and to Extend Deadline for Expert Discovery, D.E. 83

**5.   Joint statement of stipulated facts which will require no proof at trial**

1. K.G. is a minor under 21 years of age who resides in Miami, Florida.

2. Due to his disabling condition and his parents' lack of income, K.G. receives both Supplemental Security Income (SSI) and Medicaid, his only insurance.

3. I.D. is a minor under 21 years of age who resides in Homestead, Florida.

4. Due to his disabling condition and his mother's lack of income, I.D. receives both SSI and Medicaid, his only insurance.

5. C.C. is a minor under 21 years of age who resides in Miami, Florida.

6. Due to his disabling condition and his mother's lack of income, C.C. receives both SSI and Medicaid, his only insurance.

7. Defendant Dudek is the Secretary of the Florida Agency for Health Care Administration (AHCA), which administers Florida's Medicaid program.

8. As an infant, K.G. began developing normally; he was social, played and communicated well with others, and ate solid table foods.

9. However, as a young toddler, he began exhibiting aggressive, antisocial behaviors, lost all previously acquired vocabulary, and stopped eating solid food.

10. K.G. was evaluated and diagnosed with autism.

11. K.G.'s behavioral problems include outbursts, extreme aggression, kicking, hitting, throwing objects, hurting himself by banging his head against the wall, biting and scratching himself, poor eye contact, extreme irritability, hyperactivity, incessant screaming, frequent tantrums, and isolating himself from others.

12. To treat K.G.'s autism, Dr. Elza Vasconcellos, his treating neurologist, prescribed Applied Behavioral Analysis (ABA).

13. Dr. Vasconcellos is a Board Certified Pediatric Neurologist and Clinical Neuropsychologist/Epileptologist and is the Director of the Autism Clinic at the Miami Children's Hospital.

14. As an infant, I.D. had normal behavioral, social and motor development—he was thriving, started babbling, made eye contact, interacted well with others, and began walking.

15. However, sometime after he turned one, I.D.'s behavior changed; he began exhibiting odd behaviors such as screaming, not playing with others, and sensitivity to loud noises.

16. I.D. was diagnosed with Autism Spectrum Disorder by Dr. Vasconcellos.

17. I.D.'s behaviors include irritability, hyperactivity, unprovoked screaming, frequent tantrums, lack of interaction with others, flapping of hands and ears when upset, imitating

sounds, having a limited range of facial expressions, barely speaking, lack of eye contact, loss of language, hitting others including his family, rocking back and forth, and running around in circles.

18.     To treat I.D.'s Autism Spectrum Disorder, Dr. Vasconcellos, I.D.'s treating neurologist, prescribed ABA.

19.     As an infant, C.C. developed similarly to other children; he began crawling and walking, was very vocal, and interacted well with others.

20.     However, around the age of two, C.C.'s behavior changed, and he stopped socializing and being affectionate with family, became aggressive, walked on his toes, had tantrums, did not cope well with new environments, and developed sensitivity to loud noises.

21.     C.C. was diagnosed with Autism Spectrum Disorder.

22.     C.C.'s behavioral problems include frequent outbursts of anger and frustration, banging his head, hitting, punching and biting himself and others, staying angry for long periods of time, isolating himself from others, throwing things at others, refusing to eat most foods, low tolerance for change, and use of increasingly violent language during tantrums, such as "I'm going to kill you," or "I'm going to gouge your eyes out."

23.     To treat C.C.'s Autism Spectrum Disorder, Dr. Roberto Lopez Alberola, his treating neurologist, prescribed behavioral therapy, i.e. ABA.

24.     Dr. Roberto Lopez-Alberola is certified by the American Board of Psychiatry and Neurology with a Special Qualification in Child Neurology and is the Division Chief of Pediatric Neurology and an Associate Professor at the University of Miami Miller School of Medicine.

25.     Dr. Alberola does not provide ABA services.

26.     Autism is a complex neurodevelopmental disability that generally appears during the first three years of life and impacts the normal development of the brain, resulting in impairments of social interaction, verbal and non-verbal communication, leisure or play activities, and learning.

27.     Dr. James Mulick, a Professor of Psychology at Ohio State University, is currently employed as a psychologist at The Children's Hospital in Columbus, Ohio. He has done extensive research, writing, and teaching on behavioral treatments of autism. In his 30 year career, he has diagnosed and treated over 3000 individuals. His 54 page CV lists 89 published peer reviewed articles and 15 books. His publications include co-authorship of the Chapter on Autism in the American Academy of Pediatrics Textbook of Pediatric Care.

28.     Autistic disorder, the full-blown condition, is one of five disorders falling under the umbrella of "Autism Spectrum Disorder" (ASD).

29.     There is a movement away from using the term "autism" in and of itself to using the term "autistic spectrum disorder" which includes Pervasive Developmental Disorder (PDD).

30.     Autism and ASD are listed in the American Psychiatric Association's Diagnostic and Statistical Manual IV (DSM-V), and the International Classification of Diseases (ICD).

31.     The Diagnostic Statistical Manual IV (DSM-IV), which is currently the valid classification system for diagnosis, lists Pervasive Developmental Disorder and the five subcategories including autism.

32.     The DSM V, unless it changes prior to its final adoption, will only have the term Autism Spectrum Disorder (ASD), and it will subsume all the subtypes listed under PDD.

33.     ABA is a type of early intensive behavioral intervention ("EIBI") health service that uses a structured one-on-one program to treat the behavioral problems associated with ASD.

34. K.G.'s, I.D.'s, and C.C.'s mothers contacted ABA providers to obtain the prescribed ABA evaluation and treatment for their children, but they were informed that Medicaid does not cover behavior therapies or ABA to treat Autism or Autism Spectrum Disorder.

35. The Defendant's Rule describing Medicaid coverage of behavioral health services is at Rule 59G-4.050, Florida Administrative Code, which incorporates by reference The Florida Medicaid Community Behavioral Health Services Coverage and Limitations Handbook (hereafter referred to as "the Rule").

36. The Rule provides coverage of community behavioral health services, to treat certain mental health diagnoses.

37. The Rule does not provide coverage of ABA services.

38. The Rule excludes coverage of community behavioral health services to treat Autism Spectrum Disorders, including autism and PDD.

39. There is no exception in the Rule for recipients under 21.

40. For Medicaid-eligible children like K.G., I.D. and C.C., the only way to obtain Medicaid coverage for prescribed ABA is to be enrolled in the Developmental Disabilities Home and Community-Based Services Waiver program ("DD Waiver").

41. Children in the DD Waiver can receive Medicaid coverage of ABA to treat their autism.

42. Unlike regular Medicaid, the Waiver is not an entitlement and has capped enrollment.

43. K.G., I.D. and C.C. are not in the DD Waiver.

44. As of November 2010, over 19,000 Floridians are on the waiting list for the DD waiver.

45. Commercial health insurance plans and health maintenance organizations in Florida are required to provide coverage of various therapies including ABA to eligible individuals including children under the age of 18 diagnosed with Autism Spectrum Disorder.

46. During the pendency of this lawsuit, AHCA determined that ABA was "experimental."

47. In making a determination that a service is experimental and, therefore, not covered by Medicaid, AHCA generally looks at the "totality of the . . . evidence" from a number of sources: literature from peer-reviewed journals showing that there is efficacy to the treatment, standard medical practice, what commercial insurers cover, what other state Medicaid programs cover, and whether Medicare covers a service; this sometimes includes consulting with physicians.

48. The AHCA Bureau of Medicaid Services addresses questions as to whether services or treatments are experimental on a case-by-case basis.

49. AHCA contracts with Hayes, Inc. ("Hayes"), a health technology assessment company, to access Hayes' database of health technology assessments. These assessments involve reviews of published literature on a given product or service as well as an evaluation by Hayes of the evidence in the form of a "Hayes Rating" – a grade of A, B, C, D1, or D2.

50. The Hayes report includes the following disclaimer on each page: "This report is intended to provide research assistance and general information only. It is not intended to be used as the sole basis for determining coverage policy."

51. AHCA pays $60,949.00 per year for access to the Hayes database under the current contract with Hayes.

52. The evaluation by Hayes of Intensive Behavioral Intervention Therapy for Autism (which is another term for ABA) gave ABA a Hayes Rating of "C."

53. A meta-analysis is a review of multiple studies compiling the results of the studies together.

54. Pursuant to Rule 30(b)(6) Ms. Kidder was designated by AHCA as its representative who could testify regarding AHCA's determination that ABA is experimental.

55. AHCA believes that the studies regarding ABA's efficacy are "methodologically weak".

56. A "methodologically weak" study is one that is "not multi-centered, randomized, placebo-controlled."

57. A double-blinded randomized controlled trial is one where participants are randomly assigned into a treatment and a control group and neither the participants nor the persons administering the treatment are aware of which group is receiving the treatment and which group is the control.

58. In regard to ABA, AHCA did not consult with physicians or other clinicians regarding the efficacy of ABA before determining it was experimental.

59. In the past, AHCA has looked at the underlying studies cited in a Hayes report before deciding if AHCA agreed with the Hayes report's conclusions.

60. In regard to ABA, AHCA did not look at the underlying studies cited in a Hayes report before deciding if AHCA agreed with the Hayes report's conclusions.

61. The definition of medically necessary for services to be covered in the DD Waiver Handbook is the same as Medicaid's definition of "medically necessary."

62. The DD waiver also excludes Medicaid coverage of services that are experimental.

63. The DD waiver covers ABA services.

64. The Florida Medicaid State Plan authorizes reimbursement for services provided in a school based setting by certified behavioral analysts (CBAs).

### 6. **Statement of contested facts that remain to be litigated at trial**

Plaintiffs submit that there are no genuinely disputed issues of material fact that remain to be litigated at trial. The following facts are contested:

1.      Whether AHCA acted reasonably in determining that ABA is experimental.

2.      After Roberta Bradford left the Agency in September 2011, Ms. Kidder, the Bureau Chief for the Bureau of Medicaid Services, reviewed the following documents regarding the efficacy of ABA:

- *Efficacy of Applied Behavioral Intervention in Preschool Children with Autism for Improving Cognitive, Language, and Adoptive Behavior: A Systematic Review and Meta-analysis*, Michele Spreckley, MCSP, and Roslyn Boyd, Ph.D., MSC (Physcotherapy), Journal of Pediatrics, Volume 154, Issue 3, p. 338-344, March 2009.

- *Behavioral and Developmental Interventions for Autism Spectrum Disorder: A Clinical Systematic Review*, Maria B. Ospina, Jennifer Krebs Seida, Brenda Clark, Mohammad Karkhaneh, Lisa Hartling, Lisa Tjosvold, Ben Vandermeer, Veronica Smith, PLoS ONE, Volume 3, Issue 11, p. e3755, November 2008.

- *Special Report: Early Intensive Behavioral Intervention Based on Applied Behavior Analysis among Children with Autism Spectrum Disorders*, Technology Evaluation Center, TEC Assessment Program, Vol. 23, No. 9, Feb. 2009.

- *Therapies for Children with Autism Spectrum Disorders: Executive Summary*, Warren Z, Veenstra-VanderWeele J, *et al.*, published by the Agency for Healthcare Research and Quality ("AHRQ")

- *Intensive Behavioral Intervention Therapy for Autism*, Hayes directory, October 25, 2010, Hayes, Inc.

• *Age and IQ at Intake as Predictors of Placement for Young Children with Autism: A Four- to Six-Year Follow-Up,* Sandra L. Harris and Jan S. Handleman, Journal of Autism and Developmental Disorders, Vol. 30, No. 2, 2000, p. 137-142.

3. What did the articles (which AHCA reviewed in determining that ABA was experimental) consider and determine?

4. In addition to reviewing the articles and reports listed above, Ms. Kidder consulted with Darcy Abbott and William Hardin from her Bureau the week of Ms. Kidder's deposition in this matter which took place on September 23, 2011. Darcy Abbott is the Agency for Health Care Administrator of the Behavioral Health and Long Term Care section in the Bureau of Medicaid Services. William Hardin is the Program Administrator of the Behavioral Health unit in the Bureau of Medicaid Services. They generally discussed the findings in the articles and reports listed above.

5. Based upon her review of the literature and consultation with Ms. Abbott and Mr. Hardin, Ms. Kidder concluded that Roberta Bradford correctly determined that ABA is experimental, consistent with AHCA's definition of that term.

6. Under AHCA's definition of "experimental," ABA is the "standard means of treatment."

7. At that time, AHCA did not consult directly any physicians or other clinicians who treat children with autism.

8. A Hayes Rating of "A" means that Hayes has found an established benefit from the product or service. A Hayes Rating of "B" indicates some proven benefit. A Hayes Rating of "C" indicates potential but unproven benefit. A Hayes Rating of "D1" indicates there is no proven benefit and/or it is not safe based on published evidence. A Hayes Rating of "D2" indicates there is insufficient evidence to assess the safety and/or impact.

9. Some ABA providers are licensed.

10. Medicaid provides coverage of community behavioral health services to treat schizophrenia or depression.

### 7. Statement of issues of law on which there is agreement

1. For Medicaid recipients under age 21, EPSDT requires states to provide Medicaid coverage of any service that can be covered under one of the categories of services listed in 42 U.S.C. § 1396d(a) and that will correct or ameliorate the child's condition.

2. For any individual Medicaid recipient, the recipient has the burden of proving that a service is medically necessary.

### 8. Statement of issues of law that remain for determination by the Court

1. Whether Plaintiffs prescribed behavioral health service ("ABA") can be covered under 42 U.S.C. § 1396d(a) ?

2. Whether Defendant's exclusion of ABA to treat autism spectrum disorders violates the EPSDT?

3. Whether Defendant's exclusion of any behavioral health services to treat autism violated the EPSDT and comparability requirements?

4. Whether AHCA's determination that ABA is experimental is reasonable under Medicaid law?

### 9. Estimate of time to present case:

As previously noted, Plaintiffs believe there are no disputed issues of material fact. Should this Court find that there are disputed issues of material facts, the parties estimate 3 to 5 days are necessary for trial.

10. **Estimation of the maximum amount of attorneys' fees properly allowable**

Plaintiffs:

Should Plaintiffs prevail prior to a trial and assuming there is oral argument on Summary Judgment, they would be entitled to attorneys' fees of approximately $ 450,000. Should Plaintiffs prevail subsequent to a trial, the estimated additional attorneys' fees would be $285,000.

Should Defendant prevail they would not be entitled to any attorney fees.

Defendant:

Should Plaintiffs prevail prior to trial, Defendant estimates that Plaintiffs would be entitled to attorneys' fees of no more than $100,000. Should Plaintiffs prevail after a trial, Defendant estimates that Plaintiffs would be entitled to no more than $175,000 in attorneys' fees.

Respectfully submitted this 10th day of February, 2012.

| | |
|---|---|
| s/Miriam Harmatz | /s/ Andrew T. Sheeran |
| Miriam Harmatz | Andrew T. Sheeran |
| miriam@floridalegal.org | Florida Bar No. 0030599 |
| Florida Bar No. 0562017 | Assistant General Counsel |
| Florida Legal Services, Inc. | Agency for Health Care Administration |
| 3000 Biscayne Blvd., Suite 102 | 2727 Mahan Drive, Building MS#3 |
| Miami, FL 33137 | Tallahassee, FL 32308 |
| (305) 573-0092, ext. 206 | (850) 922-5873 |
| Fax: (305) 576-9664 | Fax: (850) 921-0158 |
| | Andrew.Sheeran@ahca.myflorida.com |

**Certificate of Service**

I hereby certify that on the 10th day of February, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which generates a notice of the filing to all attorneys of record.

<u>s/ Miriam Harmatz</u>

Miriam Harmatz