UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-20684-CIV-LENARD/O'SULLIVAN

K.G., by and through his next friend,
Iliana Garrido, I.D., by and through his next friend,
Nilda Rivera, and C.C., by and through his next friend
Rachelle Crawford,

    Plaintiffs,

v.

Elizabeth Dudek, in her official
Capacity as Secretary, Florida Agency for
Health Care Administration,

    Defendant.
_____/

## PLAINTIFFS' RESPONSE OPPOSING DEFENDANT'S MOTION FOR PARTIAL STAY PENDING APPEAL

Defendant's Motion for a Partial Stay of this Court's Amended Permanent Injunction Order (the "Order") should be denied. The Motion is premised on an erroneous reading of the Order and completely fails to meet the requisite standards and heavy burden for granting a stay pending appeal.

### Standard of Review for Granting a Motion to Stay Pending Appeal

The Supreme Court has set forth the factors that courts should consider in motions to stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
> (2) whether the applicant will be irreparably harmed absent a stay;
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
> (4) where the public interest lies.

1

*Hilton v. Braunskill,* 481 U.S. 770, 776 (1987).

While the first factor is ordinarily the "most important" and requires a determination that the trial court was "clearly erroneous," the Eleventh Circuit allows a "lesser showing of a 'substantial case on the merits' when 'the balance of the equities identified in factors 2, 3, and 4 weighs *heavily in favor of granting the stay*." *Garcia-Mir*, 781 F.2d 1450, 1453 (11th Cir. 1986) (emphasis added). *See also Castillo v. Tucker*, No. 10-23898, 2012 WL 2049360, at *2 (S.D. Fla. June 6, 2012) (citing *Garcia-Mir*, 781 F.2d at 1453). AHCA's Motion fails to satisfy this balancing test by any standard—much less the strict standard required for granting a stay. *See, e.g.*, *Ruderman v. Wash. Nat'l Ins. Co.*, No. 08-234012, 2012 WL 1470236 at *2 (S.D. Fla. Apr. 27, 2012) (motions seeking to stay an injunction pending an appeal constitute "extraordinary relief" for which the moving party bears a "heavy burden"); *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (finding that a stay is an "exceptional response granted only upon a showing of [the aforementioned] four factors").

**A.   Defendant Cannot Make a Strong Showing that AHCA is Likely to Succeed on the Merits.**

As an initial matter, Defendant's claim that the lesser standard applies should be rejected outright since the second and fourth factors (irreparable harm and public interest) *weigh heavily against granting the stay*. But, regardless of which standard applies, Defendant has failed to show *any* likelihood that she will prevail on the merits. AHCA's arguments rest on a fundamental misreading of the Injunction—that the Order divests the State of authority to perform individual medical necessity determinations for nonparties who are prescribed Applied Behavior Analysis ("ABA")—and a faulty legal conclusion that nonparties cannot benefit from the Injunction.

### 1. The Order does not eliminate either the requirement that prescribed services must be medically necessary or the State's role in making individual medical necessity determinations.

Defendant repeatedly claims that the Order is overbroad because it impermissibly eliminates the State's role in making individual medical necessity determinations. *See, e.g.,* D.E. 158 at 2, 4, 5, 6, 7, 12, 13, 15. This claim reflects an incorrect reading of the Order and can only be characterized as a "non-issue." It is axiomatic that coverage for medical services can be denied if the service is not "medically necessary." *See* 42 C.F.R. § 440.230(d) (setting forth that the State Medicaid agency "may place appropriate limits on a service based on such criteria as medical necessity"). This is the standard practice in any insurance program, including Medicaid. It is also understood that Medicaid beneficiaries have the initial burden of proving medical necessity, that states do not have to cover treatments that are not medically necessary, and that the state Medicaid agency has an undisputed role in making medical necessity determinations.[1]

The record clearly demonstrates that neither Plaintiffs nor this Honorable Court suggest otherwise, and courts need not reiterate implicit and undisputed elements of an order. *See* D.E. 63 at 12, Sec. (C)(ii) (Pls.' Am. Compl.) (requesting injunctive relief ordering the Defendant to "[a]mend the Behavioral Health Rule to include coverage of *medically necessary* behavioral health services, including ABA, for treatment of Autism Spectrum Disorders in children and youth under age 21"); D.E. 98-1 at 12, Sec. 7 ¶ 2 (Parties' Joint Pre-Trial Stipulations) (*incorporated in* Inj. Order, D.E. 123 at 6) ("For any individual Medicaid recipient, the recipient

---

[1] *See, e.g.*, *Moore ex rel. Moore v. Reese*, 637 F.3d 1220 (11th Cir. 2011) (establishing that both the individual Medicaid recipient's physician and the State have a role in determining if a prescribed service is medically necessary for the individual patient); *Murray v. Auslander*, 244 F.3d 807, 809 n. 2 (11th Cir. 2001) ("Federal law allows Medicaid plans to apply a 'medical necessity' test to all applicants.") (citations omitted); *Rush v. Parham*, 625 F.2d 1150, 1155 (5th Cir. 1980) (holding that states are not required to pay for services that are not medically necessary).

has the burden of proving that a service is medically necessary."); D.E. 123 at 11 (Inj. Order) (citing *Rush*, 625 F.2d at 1155; *Moore*, 637 F.3d at 1248 n. 48).

Defendant's repeated assertions that AHCA's undisputed role in individual medical necessity determinations has been "stripped," "divest[ed]," "removed," or "prevented," (*see* D.E. 158 at 3, 4, 6, 12), are simply inaccurate. Such assertions would only be accurate if the District Court had ordered AHCA to provide ABA to any recipient for whom it is prescribed—*whether or not* the prescribed ABA is medically necessary for that individual child. *Compare* D.E. 158 at 3, 4, 6, 12, *with* D.E. 123 at 26 ¶ 2.[2]

Further, Defendant's claim that the Injunction's "sweeping breadth is not supported by the pleadings or the evidence," (D.E. 158 at 7), rests on the same inaccurate characterization of the Injunction discussed above, i.e., that the Court ordered the State not to perform medical necessity determinations regarding requests for ABA treatment on behalf of Medicaid-eligible children diagnosed with Autism Spectrum Disorders ("ASD"). In a misplaced argument connected with this claim, Defendant asserts that the Court's medical necessity determination for the three named Plaintiffs is "not ripe." *See* D.E. 158 at 6-7. This argument ignores Plaintiffs' Prayer for Relief requesting, *inter alia,* an order that Defendant "[e]nsure that Plaintiffs receive Medicaid coverage for medically necessary behavioral health services, including ABA." *See* D.E. 63 at 12, Sec. (C)(iii). Thus, Plaintiffs needed to establish that their prescribed ABA was medically necessary, and did so through uncontroverted evidence presented by their physicians.

---

[2] And, while Defendant's assertions are no more than misguided hyperbole, for the purpose of eliminating an undisputed issue, the Court could modify the Order *sua sponte*, pursuant to FED. R. CIV. P. 60(a) and FED. R. APP. P. 10(e)(2)(B), to read: "[T]he State of Florida is hereby ordered to provide, fund, and authorize <u>medically necessary</u> Applied Behavioral Analysis treatment . . . ." (D.E. 123 at 26 ¶ 2.)

Defendant obviously could have had Plaintiffs examined by the State's own physician(s), and (if appropriate) have offered testimony challenging Plaintiffs' evidence of medical necessity. It is absurd to argue now that AHCA's failure to do so renders Plaintiffs' proof of medical necessity "unripe."

### 2. The Court's Injunction appropriately benefits nonparties.

Contrary to Defendant's assertions, it is entirely appropriate for injunctive relief to benefit nonparties even without class certification. *See Bailey v. Patterson*, 323 F.2d 201, 206-07 (5th Cir. 1963).[3] As in the present case, the plaintiffs in *Bailey* claimed that a statewide practice violated their rights under federal law. *Id*. at 203. In rejecting the contention that relief should be limited to the three plaintiffs given the absence of a properly certified class, the court held that it was "unnecessary" to determine whether the action was properly brought under Fed. R. Civ. P. 23 because parties and nonparties are entitled to the same relief:

> whether or not appellants may properly represent all . . . [nonparties] similarly situated, the decree to which they are entitled is the same . . . . The very nature of the rights appellants seek to vindicate requires that the decree run to the benefit not only of the named plaintiffs but also for all persons similarly situated.

*Id*. at 206.

Subsequent cases in the Eleventh Circuit follow *Bailey* in reiterating the principle that nonparties are entitled to the benefits of an injunction. *See, e.g.*, *United Farmworkers v. City of Delray Beach, Fla.*, 493 F.2d 799, 812 (5th Cir. 1974) (finding it unnecessary to determine if denial of class certification was abuse of discretion because "the requested injunctive and declaratory relief will benefit not only the individual appellants . . . but all other persons subject to the practice under attack"). Notably, while

---

[3] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

5

*United Farmworkers* and *Bailey* were initially filed as class actions, it is also well-settled that "classwide injunctive relief may be appropriate in an individual action." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1136 (11th Cir. 1984); *Dybczak v. Tuskegee Institute*, 737 F.2d 1524, 1527 (11th Cir. 1984) (holding that in a suit brought in a plaintiff's individual capacity, injunctive relief benefitting nonparties may be required if it relates to the vindication of the plaintiff's rights).

Other circuits have also cited *Bailey* in holding that class certification is superfluous when defendants are public officials charged with violating plaintiffs' rights under the Constitution or federal law. *See, e.g.*, *Vulcan Soc. v. Civ. Serv. Comm'n*, 490 F.2d 387, 391, 399 (2d Cir. 1973) (citing *Bailey*, 323 F.2d at 206-07) (in a case against public officials, plaintiffs' request for class certification was denied as being unnecessary "because the injunctive relief would benefit all persons similarly situated"); *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973) ) (citing *Bailey*, 323 F.2d at 206-207) (denial of class certification was proper because "class action designation is largely a formality" when seeking prospective injunctive relief against state officials).

In light of this overwhelming precedent, Defendant's contention that Plaintiffs did not seek class certification because doing so was allegedly "impossible" is erroneous and irrelevant. *See* D.E. 158 at 10.[4]  It is completely within the plaintiff's discretion whether to file for class

---

[4] Defendant relies heavily upon *Zepeda v. INS*, 753 F.2d 719 (9th Cir.1985) in arguing that the injunction can cover only individual plaintiffs absent a certified class. *See* D.E. 158 at 9-11. This reliance is fatally flawed. First, Defendant ignores the fifty years of Circuit precedent discussed above. Second, the *Zepeda* holdings critical to Defendant's argument were distinguished by a subsequent Ninth Circuit case, *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987) ("The import of the rule underlying *Zepeda* is that an injunction cannot issue *against* an entity that is not a party to the suit.") (emphasis added).  Obviously, this Court's Order did not issue *against* nonparties.  Finally, *Zepeda* remains fundamentally distinguishable from the instant

certification, and as demonstrated above, class certification is unnecessary when pursuing injunctive relief for a system-wide violation. Furthermore, class certification would have been indisputably inefficient. *See, e.g.*, *D.C. Podiatry Soc. v. District of Columbia*, 65 F.R.D. 113, 115 (D.D.C. 1974) ("When an injunction on behalf of an individual plaintiff would have the same purpose and effect, there seems to be no reason why a court should go through the class action rituals."); *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1153 (9th Cir. 2004) (finding it "unnecessary and inefficient" for nonparties affected by an unlawful system-wide policy to separately challenge that same policy).[5]

Defendant also implies that Plaintiffs never sought the system-wide relief ordered by the Court. *See* D.E. 158 at 10 ("Quite unlike a class action, this was simply a suit brought by three plaintiffs seeking ABA services for their children."). This implication is disingenuous. It was absolutely and abundantly clear to Defendant (and the Court) that Plaintiffs sought injunctive relief which, if granted, would benefit a significant number of children in addition to the three named Plaintiffs. *See* D.E. 20 at 7, Sec. (f) (Court's Order requiring that Joint Scheduling Report ("JSR") contain specific items, including: "[a]ny other information that might be helpful to the Court"). Accordingly, the JSR included the following:

---

case because *Zepeda* concerned a *preliminary* injunction. *Bresgal*, 843 F.2d at 1169 (limiting the applicability of *Zepeda*'s holdings to cases concerning *preliminary* injunctions).

[5] Defendant's standing argument also misconstrues relevant case law. For example, Defendant cites *Warth v. Seldin*, 422 U.S. 490 (1975), ostensibly for the proposition that Plaintiffs cannot assert the rights of third parties, while omitting the relevant holding that a plaintiff "generally must assert his own *legal rights* and interests, and cannot rest his claim to relief on the *legal rights* or interests of third parties." *Warth*, 422 U.S. at 499 (emphasis added). Here, Plaintiffs asserted their own legal rights—their claim for relief did not rest on the legal rights of third parties. Defendant also misconstrues the holdings of *Singleton v. Wulff*, 428 U.S. 106 (1976); this case, like *Warth*, actually *supports* Plaintiffs' position and the entry of the Court's Injunction. *Id.* at 113-118.

7

> Plaintiff notes that the issue in this case is systemic and affects numerous indigent children in the state of Florida who suffer from autism and other autism spectrum disorders and whose doctors have prescribed behavioral health services, including ABA.  Plaintiff filed this case seeking declaratory and injunctive relief which would remedy the alleged violation for all similarly situated children.  Plaintiff believes that the legality of the challenged state rule can be addressed by this Court without moving to add additional plaintiff(s) or moving for class certification.  Defendant reserves the right to object to adding additional plaintiffs and/or class certification in the event Plaintiff files such a motion(s).

D.E. 27 at 3, Sec. (h) (Joint Scheduling Report).  *See also* Trial Tr. at 96:14-103:4 (Test. of Karen Chang) (Defendant's fact witness testifying to estimated costs that the State would incur if ABA were included in the State Plan as a covered service, i.e., if the Court granted Plaintiffs' request for injunctive relief).

Finally, in arguing that the injunction was not necessary for Plaintiffs' relief, Defendant appropriately cites relevant authority (*see* D.E. 158 at 11): "An injunction . . . is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in a lawsuit—*even if it is not a class action*—***if such breadth is necessary to give prevailing parties the relief to which they are entitled***."  *Prof'l Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cnty. Cmty. Coll. Dist.*, 730 F.2d 258, 273-74 (5th Cir. 1984) (citations omitted) (emphasis added).  In this case, Plaintiffs successfully challenged an illegal state rule which applied to *all* Florida Medicaid-eligible children diagnosed with Autism Spectrum Disorders ("ASD").  The Court could not enjoin the challenged rule only as it applies to the three prevailing parties.  Thus, providing Plaintiffs with the relief to which they are entitled *required* injunctive relief extending to other children on Medicaid with autism disorders.  In short, this case is a perfect example of a system-wide violation necessitating system-wide injunctive relief without the need for class certification.

### B. AHCA is Not Irreparably Harmed Absent a Stay.

Defendant also erroneously claims that the State would suffer irreparable harm absent a stay. Again, Defendant misstates the plain language of the Injunction, incorrectly arguing that the Order "removed AHCA from its statutory duty to review a physician's certification of medical necessity." *See* D.E. 158 at 12-13. Defendant further claims that "AHCA will be irreparably harmed if the Injunction is not stayed as to the nonparties because of the *substantial economic cost* for ABA services for this population." (D.E. 158 at 14.) In support, Defendant attaches the declaration of an AHCA employee, Ronique Hall, who asserts that 482 prior authorization requests for ABA have been approved between entry of the Injunction on March 26, 2012, and July, 23, 2012. (D.E. 158 at 13; D.E. 158-1 at ¶ 4.)[6]

First, Ms. Hall's declaration actually undermines Defendant's claim of "substantial economic costs" as it demonstrates that AHCA's costs are *de minimis* at most.[7] Second, even the minimal costs implied in Ms. Hall's Declaration are inflated and misleading. To the extent that such data can even be considered relevant or admissible at this stage, Plaintiffs are obliged to

---

[6] As a final judgment has been entered, the inclusion of Ms. Hall's declaration, containing new and additional facts, raises concerns. For the purpose of maintaining an appellate record that "truly discloses what occurred in the district court," FED. R. APP. P. 10(e)(1), Plaintiffs submit that no new facts or declarations should be considered at this juncture, as such information is not part of the record on appeal and therefore cannot be considered by the Eleventh Circuit in reviewing this Court's proceedings. However, as Plaintiffs obviously have no opportunity to cross-examine or depose Ms. Hall, they respectfully attach their own declaration responding to her assertions. *See* Havens Decl. Ex. 1.

[7] It is worth noting that the costs to the state pending appeal would have been higher if Defendant had decided to notify the families of the over 8,000 children on Medicaid with autism diagnoses. *See* Havens Decl. Ex. 1, at 2, Attach. B. Defendant, however, refused requests by Plaintiffs' counsel that these families be notified regarding the change in ABA coverage ordered by the Court. *See id.*

correct the declarant's erroneous assertions and misleading implications. The fact that 482 prior authorization requests have been approved in no way means that 482 children are now receiving ABA treatment (or will receive treatment pending the appeal). To the contrary, for a variety of reasons, the number of children receiving ABA is significantly lower. In response to a Fla. Stat. Ch. 119 Public Records Request for data indicating the number of children who have actually received ABA treatment, the Agency provided the following information: "190 claims for reimbursement have been submitted"; "153 claims have been paid"; and "37 claims have been voided." *See* Havens Decl. Ex. 1, Attach. C, D. Defendant did not indicate how many children are *actually* receiving ABA treatment. *See id.*

Furthermore, it is unclear if the "153" figure represents individual recipients, or the congregate number of claims approved. It is also unclear if the "37 voided claims" represent 37 recipients. But, even if 153 children are in fact receiving treatment (as opposed, for example, to 15 children whose providers have submitted reimbursement claims for 10-11 sessions each), the cost of their ABA treatment clearly fails to constitute the "substantial economic cost" alleged by Defendant. *See* D.E. 158 at 14. Finally, after stating that she has approved 482 prior authorization requests for ABA services, (D.E. 158-1 at 2 ¶ 4), Ms. Hall misleadingly asserts that "the ABA services provided to these Medicaid recipients are to be *paid for with Florida Medicaid funds*" (*Id*. at 2 ¶ 5). In fact, most of the funding for the "190 claims" comes from the federal government—not Florida. *See* D.E. 45 at 20 n. 12.

**D.   The Public Interest Lies in Favor of Denying the Defendant's Motion to Stay.**

Defendant's public interest argument is also premised on the mistaken claim that the Order eliminated AHCA's "role in overseeing the [medical necessity determination] process."[8]

---

[8] AHCA's gratuitous and irrelevant implication of "provider abuse" in the alleged absence of AHCA's oversight lacks any support in the record.

(D.E. 158 at 15.)  As explained throughout this Response, the Court neither ordered the State to pay for medically unnecessary services, nor eliminated the State's role in determining individual medical necessity.  It is undisputed that both the recipient's provider and the State medical reviewer have a role in determining the medical necessity of an individual recipient's prescribed service.[9]  *See* D.E. 63 at 12, Sec. (C)(ii) (Pls.' Am. Compl.) (requesting an order that Defendant "[a]mend the Behavioral Health Rule to include coverage of *medically necessary* behavioral health services, including ABA, for treatment of Autism Spectrum Disorders in children and youth under age 21").  *See also supra* note 1 and accompanying text; D.E. 123 at 11.

As previously noted, very few children are actually receiving ABA pursuant to the Injunction.  But, even if all potentially eligible children were able to avail themselves of the Injunction's benefits and receive medically necessary prescribed ABA pending appeal, *the public interest would not be served by staying the injunction as to nonparties*.  There can be no dispute whatsoever that Medicaid-eligible children (other than named Plaintiffs) will suffer irreparable injury if Defendant's stay is granted.[10]  As set forth above, it is entirely appropriate for permanent injunctions to favorably impact nonparties, and this case illustrates how this well-developed jurisprudence serves the public interest.

---

[9] To the extent that Defendant is not currently employing her full range of medical necessity review protocol *vis-à-vis* ABA prescribed for children other than the three Plaintiffs, that is AHCA's choice.

[10] Defendant also asks that the requested stay be granted without requiring security, arguing that the stay's "effect would be limited to nonparties," (D.E. 158 at 16),  i.e., all the children in Florida who rely on Medicaid, who suffer from with autism disorders, and for whom ABA treatment is medically necessary.  As demonstrated above, nonparties can legitimately benefit from injunctive relief, and would be irreparably harmed by Defendant's requested stay.  No monetary sum can adequately secure their rights.  An injunction is, by definition, an equitable remedy that is necessary because irreparable injury has been proven and no adequate remedy at law exists.  *See Lewis v. S.S. Baune*, 534 F. 2d 1115, 1124 (5th Cir. 1976).

Finally, uncontroverted evidence in the record shows that treating children who are diagnosed with Autism Spectrum Disorders with ABA will ultimately *save* significant public funding. As one of Plaintiffs' experts testified, autistic children who do not receive ABA treatment will likely be unnecessarily disabled, and therefore need public support for the remainder of their lives. *See* D.E. 123 at 25. Thus, the Injunction's application to nonparties is unquestionably consistent with serving the public interest.

## Conclusion

Much of Defendant's argument rests on a fundamental misunderstanding of the Order. The Court is obviously free to clarify that misunderstanding, as specified above in note 2, and thereby avoid the need for further briefing on a "non-issue." However, regardless of whether the Court elects to do so, Defendant has failed to establish a substantial likelihood of success on the merits, or that AHCA will be irreparably harmed absent a stay, or that the public interest will be served by a stay. Indeed, all of these critical factors weigh heavily against granting a partial stay of the Injunction. Accordingly, Plaintiffs respectfully request that the Court deny Defendant's Motion.

Respectfully submitted this 13th day of August, 2012.

/s/ Miriam Harmatz
Miriam Harmatz
Florida Bar No. 0562017
Florida Legal Services, Inc.
3000 Biscayne Blvd., Suite 102
Miami, FL 33137
Phone: 305/573-0092 ext. 206
Fax: 305/576-9664
miriam@floridalegal.org

## Certificate of Service

I hereby certify that on the 13th day of August, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which generates a notice of the filing to all attorneys of record.

/s/ Miriam Harmatz
Miriam Harmatz