UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20684-CIV-LENARD/O'SULLIVAN

**K.G., by and through his next friend, ILIANA GARRIDO, I.D., by and through his next friend, NILDA RIVERA, and C.C., by and through his next friend, RACHELLE CRAWFORD,**

 Plaintiffs,

v.

**ELIZABETH DUDEK, in her official capacity as Secretary, Florida Agency for Health Care Administration,**

 Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL STAY PENDING APPEAL (D.E. 158) AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE (D.E. 170)

**THIS CAUSE** is before the Court on Defendant's Motion for Partial Stay Pending Appeal ("Motion," D.E. 158), filed on July 27, 2012. On August 13, 2012, Plaintiffs filed their Response ("Response," D.E. 164), and on August 22, 2012, Defendant filed her Reply ("Reply," D.E. 165). On September 11, 2012, the Court granted Plaintiffs leave to file a surreply (D.E. 168), and Plaintiffs filed their Surreply ("Surreply," D.E. 169) on September 17, 2012. On October 2, 2012, Defendant filed a Motion to Strike the Declaration of Jon S. Bailey Attached to Plaintiffs' Surreply ("Motion to Strike," D.E. 170), to which Plaintiffs filed their Response ("Response to Motion to Strike," D.E. 171) on October 16, 2012. No

reply to the motion to strike was filed. Upon review of the Motions, Responses, Reply, Surreply, and the record, the Court finds as follows.

**I.     Background**

Plaintiffs K.G., I.D., and C.C., by and through their next friends, Iliana Garrido, Nilda Rivera, and Rachelle Crawford, respectively, brought suit against Defendant Elizabeth Dudek, in her official capacity as Secretary, Florida Agency for Health Care Administration ("AHCA" or "the Agency"). When this case was filed, Florida's Medicaid program did not cover Applied Behavioral Analysis ("ABA") or any community behavioral health services to treat autism or Autism Spectrum Disorder ("ASD"). Plaintiffs sought, inter alia, a permanent injunction ensuring that Medicaid-eligible minors under the age of 21 in Florida who have been diagnosed with autism or ASD receive Medicaid coverage for medically necessary behavioral health services, including ABA. (See First Am. Compl., D.E. 63, at 11-12.)

Following a four-day bench trial in March 2012, the Court issued its Amended Permanent Injunction Order ("Order," D.E. 123). In determining whether AHCA's decision not to cover ABA for children with autism and ASD violated the EPSDT provisions in the Medicaid Act,[1] the Court considered the following two questions: (1) is ABA among those

---

[1] Under the federal Medicaid Act, states must provide "early and periodic screening, diagnostic, and treatment services" ("EPSDT") for Medicaid-eligible children under the age of 21. 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396d(a)(4)(B). EPSDT screens include any visit to a physician (including family-initiated visits) to determine if the child has a condition requiring further assessment, diagnosis or treatment. (Memorandum from Christine Nye, Director, Federal Health Care Financing Administration Medicaid Bureau (Apr. 12, 1991), D.E. 21-5.) This EPSDT mandate requires the State to provide to Medicaid-eligible minors

services which can be covered under 42 U.S.C. § 1396d(a), and (2) is ABA necessary to correct or ameliorate an illness or condition for a Medicaid recipient under age 21? (See Order 9.) The Court answered both questions in the affirmative. First, the Court found that "ABA falls within the scope of 42 U.S.C. § 1396d(a)(13)[2]" because "Plaintiffs have established beyond all doubt through testimony and exhibits at trial that ABA is necessary to restore children with autism or ASD to the normal trajectory of development that all children have through the first twelve years of life." (Id. at 9-10.) Second, the Court found that "ABA is 'medically necessary' and is not 'experimental' as defined under Florida administrative law and federal law" and further found that "the determination by AHCA that ABA is experimental was arbitrary, capricious, and unreasonable both in its process and in its conclusion." (Id. at 11-14.) The Court concluded that "Plaintiffs have clearly established that Florida's exclusion of ABA for Medicaid-eligible minors diagnosed with autism or ASD violates the broad EPSDT mandate in the federal Medicaid Act." (Id. at 24.) After finding

---

"[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5) (emphasis added).

[2]   The services under this provision are as follows:

other diagnostic, screening, preventive, and rehabilitative services, including any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level[.]

42 U.S.C. § 1396d(a)(13) (emphasis added).

3

that there is no adequate remedy at law for the violation of this right, there would be irreparable injury to Plaintiffs and all Medicaid-eligible minors in Florida who have been diagnosed with autism or ASD if these children do not receive prescribed, medically necessary ABA treatment pursuant to an injunction, and that issuance of an injunction to enforce the federal Medicaid Act is without question in the public interest, the Court concluded that Plaintiffs satisfied by a preponderance of the evidence the four factors necessary to be granted a permanent injunction. (See id. at 24-25.) The Court enjoined Defendant "from enforcing Florida Behavioral Health Rule 2-1-4 as it relates to autism, Autism Spectrum Disorder, and Applied Behavioral Analysis treatment" and ordered the State to "provide, fund, and authorize Applied Behavioral Analysis treatment to Plaintiffs K.G., I.D., and C.C., as well as to all Medicaid-eligible persons under the age of 21 in Florida who have been diagnosed with autism or Autism Spectrum Disorder, as prescribed by a physician or other licensed practitioner." (Id. at 25-26.)

## II.   Motions, Responses, Reply, and Surreply

Defendant moves for a partial stay of this Court's Order "to the extent it requires AHCA to provide Applied Behavioral Analysis ('ABA') services to . . . nonparties." (Motion 1.) Defendant argues that AHCA is likely to prevail on appeal because the injunction is overly broad in three respects: (1) "the Injunction has stripped AHCA of its statutory role as arbiter of 'medical necessity,'" (2) "the Injunction exceeds the bounds of the allegations in the Amended Complaint and the evidence presented at trial," and (3) "the Injunction granted class-wide relief where no class was certified and where Plaintiffs do not

have standing to seek relief for nonparties." (Id. at 2-12.) Defendant also argues that "AHCA will be irreparably injured absent a limited stay of the Injunction as to the nonparties" because Defendant claims that "AHCA is prevented from making medical necessity evaluations or reevaluations in regard to ABA services." (Id. at 12-14.) Defendant attached a declaration by Ronique Hall, Medical Health Care Program Analyst for AHCA, to the Motion and argues that the declaration shows that AHCA has approved 482 requests for ABA services without being able to evaluate whether any of these services were medically necessary. (Id. at 13-14.) Defendant additionally argues that "the public interest is best served by the stay of the Injunction as to the nonparties" because "if a service is not medically necessary for a particular Medicaid recipient, limited state and federal taxpayer funds should not be utilized to pay for it." (Id. at 14-15.) Finally, Defendant argues that the three Plaintiffs themselves would not be harmed by the issuance of a stay because the "Motion addresses only the relief afforded to the nonparties to the instant action." (Id. at 15-16.)

In their Response, Plaintiffs first argue that Defendant cannot make a strong showing that AHCA is likely to succeed on the merits because "AHCA's arguments rest on a fundamental misreading of the Injunction – that the Order divests the State of authority to perform individual medical necessity determinations for nonparties who are prescribed Applied Behavior Analysis ('ABA') – and a faulty legal conclusion that nonparties cannot benefit from the Injunction." (Response 2.) Plaintiffs contend that "it is entirely appropriate for injunctive relief to benefit nonparties even without class certification," especially in this

5

case where "Plaintiffs successfully challenged an illegal state rule which applied to <u>all</u> Florida Medicaid-eligible children diagnosed with Autism Spectrum Disorders" and "[t]he Court could not enjoin the challenged rule only as it applies to the three prevailing parties." (Id. at 5-8.) Plaintiffs argue that AHCA will not be irreparably harmed without a stay because the injunction does not prevent AHCA from performing individual medical necessity determinations. (Id. at 9.) With regard to the alleged cost of providing ABA treatment to Medicaid-eligible children in Florida, Plaintiffs first argue that because the Court has entered final judgment in this case, the Court should not consider the declaration of Ronique Hall because her declaration includes new and additional facts that are not part of the record currently on appeal. (Id. at 9 n.6.) Plaintiffs state that because they "have no opportunity to cross-examine or depose Ms. Hall, they respectfully attach their own declaration responding to her assertions." (Id. (citing Declaration of Betsy Havens, D.E. 164-1).) Addressing the merits of Defendant's cost claims, Plaintiffs argue that Hall's declaration shows that "AHCA's costs are <u>de minimis</u> at most" and that "even the minimal costs implied in Ms. Hall's Declaration are inflated and misleading." (Id. at 9.) Specifically, Plaintiffs argue that "[t]he fact that 482 prior authorization requests have been approved in no way means that 482 children are now receiving ABA treatment." (Id. at 10.) Plaintiffs assert that in response to a "public records request for data indicating the number of children who have actually received ABA treatment, the Agency provided the following information: '190 claims for reimbursement have been submitted'; '153 claims have been paid'; and '37 claims have been voided.'" (Id.) Plaintiffs further assert that "even if 153 children are in fact receiving

6

treatment . . . , the cost of their ABA treatment clearly fails to constitute the 'substantial economic cost' alleged by Defendant," especially when most of the funding for the claims "comes from the federal government – not Florida." (Id.) Finally, Plaintiffs argue that the public interest would not be served by staying the injunction as to nonparties because "Medicaid-eligible children . . . will suffer irreparable injury if Defendant's stay is granted" and because evidence at trial showed that "autistic children who do not receive ABA treatment will likely be unnecessarily disabled, and therefore need public support for the remainder of their lives," which would ultimately require more public funding than providing children with ABA treatment. (Id. at 10-12.)

In her Reply, Defendant repeats her argument that the injunction prevents AHCA from making individual medical necessity determinations and asserts that Plaintiffs agree with this position. (See Reply 1-4.) Defendant then argues that "[b]ecause the trial did not concern the medical necessity of ABA services for nonparties, it was error [for the Court] to decide this issue." (Id. at 4.) Defendant also argues that it is improper to grant an affirmative injunction that benefits nonparties. (Id. at 5-7.) Finally, Defendant argues that "AHCA will suffer irreparable harm absent the requested stay" because "[i]f AHCA is forced to provide ABA services for nonparties absent medical need . . . , it is uncontested that these amounts will be unrecoverable." (Id. at 7-8.)

In their Surreply, Plaintiffs argue that Defendant misrepresented their position by stating that Plaintiffs agreed that the injunction was "erroneous." (Surreply 1-2.) Plaintiffs also argue "Defendant's misrepresentations . . . may be traced to a fundamental

7

misunderstanding of the separate and distinct global/macro and individual/micro determinations related to medical necessity. AHCA made a global determination that ABA was an 'experimental' treatment and therefore 'not medically necessary,'" and "[t]he Court refuted this macro-level determination after finding that it was 'unreasonable, arbitrary, and capricious.'" (Id. at 3 (quoting Order at 11-14).) Finally, Plaintiffs argue that if AHCA is providing ABA treatment to children without performing individual medical necessity determinations, that is AHCA's choice." (Id. at 2-3.) Plaintiffs attached the declaration of Dr. Jon Bailey to their surreply, arguing that the declaration "indicates that the Agency appears to be engaged in making medical necessity determinations." (Id. at 3 n.1.)

In her Motion to Strike, Defendant moves to strike the declaration of Dr. Jon Bailey because it is "layered with hearsay, is not within the personal knowledge of Bailey, and encompasses misstatements about AHCA's practices with regard to the ABA prior authorization process." (Motion to Strike 2-3.)

In their Response to Defendant's Motion to Strike, Plaintiffs argue that Federal Rule 12(f) is not available to strike material that is not contained within a pleading and that "even when properly filed in response to matters in a pleading, motions to strike are strongly disfavored, and the burden on the moving party is significant." (Response to Motion to Strike 1-2.) Finally, Plaintiffs argue that 'the truth of the matter asserted,' i.e., whether an AHCA regional official told a provider that the Agency was now performing individual ABA medical necessity reviews, is ultimately irrelevant" because "the extent to which AHCA has or will provide coverage of prescribed ABA treatment to children without performing

8

individual medical necessity determinations is AHCA's choice." (Id. at 2-3.)

## III. Legal Standards

Federal Rule of Civil Procedure 62(c) states, in relevant part, "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." FED. R. CIV. P. 62(c). Motions under Rule 62(c) "are disfavored and granted only in exceptional circumstances." Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986). In other words, "[a] motion pursuant to Rule 62(c) seeking to stay an injunction pending appeal is 'extraordinary relief' for which the moving party bears a 'heavy burden.'" Jaffe v. Bank of Am., N.A., 667 F. Supp. 2d 1299, 1323 (S.D. Fla. 2009) (quoting Winston Salem/Forsyth Cnty. Bd. of Educ. v. Scott, 404 U.S. 1221, 1231 (1971)). When determining whether to grant a motion to stay, the Court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987). With regard to these four factors,[3] the Eleventh Circuit has stated,

> Ordinarily the first factor is the most important. A finding that the movant

---

[3] The Supreme Court has noted that "[d]ifferent Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal," but that "[u]nder both Rules, . . . the factors regulating the issuance of a stay are generally the same." Hilton, 481 U.S. at 776 (citations omitted).

9

> demonstrates a probable likelihood of success on the merits on appeal requires that we determine that the trial court below was clearly erroneous. But the movant may also have his motion granted upon a lesser showing of a substantial case on the merits when the balance of the equities identified in factors 2, 3, and 4 weighs heavily in favor of granting the stay.

Garcia-Mir, 781 F.2d at 1453 (quotation marks, brackets, and citations omitted). The burden to demonstrate circumstances warranting issuance of a stay is on the movant. Jaffe, 667 F. Supp. 2d at 1323-24.

**IV. Discussion**

Defendant is not entitled to a stay of the injunction. First, Defendant has not shown that she is likely to succeed on the merits. See Hilton, 481 U.S. at 776. Defendant essentially argues that she is likely to succeed on the merits because the Court's injunction improperly eliminates AHCA's authority to perform individual medical necessity determinations. However, Defendant's argument is based upon a fundamental misunderstanding of this Court's Amended Permanent Injunction Order (D.E. 123). AHCA had made a wholesale determination that ABA was an "experimental" treatment and therefore not "medically necessary" for all Medicaid-eligible children in Florida. (See Order 2.) AHCA memorialized this decision in the Agency's Behavioral Health Services Rule 2-1-4, which stated that "Medicaid does not pay for community behavioral health services for autism." (See id.; see also id. at 2 n.2.) In its Order, the Court first recognized that the states are not required to pay for "experimental forms of treatment" because that type of treatment is "generally not recognized as effective in the medical community" and is therefore "not

medically necessary." (Id. at 11 (quoting Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1248 n.48 (11th Cir. 2011)).) The Court set forth the definitions of "medically necessary" and "experimental," as defined by Florida administrative law and federal law. (See id. at 12 n.15, 12 n.16, 13 n.17.) The Court ruled that AHCA's wholesale determination that ABA was an "experimental" treatment – and therefore its decision to deny ABA treatment for all Medicaid-eligible children in Florida – "was arbitrary, capricious, and unreasonable both in its process and its conclusion." (Id. at 6, 11; see also id. at 24 (stating that "Florida's exclusion of ABA for Medicaid-eligible minors diagnosed with autism or ASD violates the broad EPSDT mandate in the federal Medicaid Act").) The Court enjoined Defendant "from enforcing Florida Behavioral Health Rule 2-1-4 as it relates to autism, Autism Spectrum Disorder, and Applied Behavioral Analysis treatment" and ordered the State to "provide, fund, and authorize Applied Behavioral Analysis treatment to Plaintiffs K.G., I.D., and C.C., as well as to all Medicaid-eligible persons under the age of 21 in Florida who have been diagnosed with autism or Autism Spectrum Disorder, as prescribed by a physician or other licensed practitioner." (Id. at 25-26.) The Court did not enjoin the State from performing individual medical necessity determinations. (See id.) The question of whether a state Medicaid agency can perform individual medical necessity determinations was not an issue in this case,[4] and accordingly, the Court did not rule on this issue in its Order. Specifically,

---

[4] The Parties' Amended Joint Pretrial Statement explicitly stated, "For any individual Medicaid recipient, the recipient has the burden of proving that a service is medically necessary." (Amended Joint Pretrial Statement, D.E. 98-1, at 12, Sec. 7 ¶ 2, incorporated in Amended Permanent Injunction Order, D.E. 123, at 6.)

11

the Order did not refute binding Eleventh Circuit precedent that a state Medicaid agency, like AHCA in this case, may perform an independent medical necessity determination on any given prescribed treatment for any given recipient consistent with federal EPSDT requirements. See Moore, 637 F.3d at 1259-60 (stating that "the Medicaid Act does not give the treating physician unilateral discretion to define medical necessity so long as the physician does not violate the law or breach ethical duties any more than it gives such discretion to the state so long as the state does not refuse to provide a required service outright"). In sum, it was AHCA's outright refusal to provide prescribed, medically necessary ABA treatment to any Medicaid-eligible child in Florida with autism or ASD based on AHCA's arbitrary, capricious, and unreasonable determination that ABA was "experimental" that the Court found violated the Medicaid Act. Accordingly, because Defendant's argument that "the Injunction has stripped AHCA of its statutory role as arbiter of 'medical necessity'" is incorrect, Defendant is not likely to succeed on the merits on this argument.

Defendant's second merits argument, that "the Injunction exceeds the bounds of the allegations in the Amended Complaint and the evidence presented at trial," is also baseless. This argument partially rests on the same inaccurate characterization of the injunction discussed above – that is, that the Court enjoined the State from performing individual medical necessity determinations. As stated above, this argument is based on a fundamental misunderstanding of the Court's Order. Defendant also argues that the "the issue of whether

12

AHCA wrongly determined that ABA was medically necessary for Plaintiffs, or any Medicaid recipient with an ASD diagnosis, was not ripe for consideration by this Court when Plaintiffs filed their operative pleading in this suit, nor was it an issue at trial." (Motion 7.) However, in Plaintiffs' Amended Complaint, part of the relief requested was an order that Defendant "[e]nsure that Plaintiffs receive Medicaid coverage for medically necessary behavioral health services, including ABA." (Am. Compl., D.E. 63, at 12.) Therefore, at trial, Plaintiffs needed to establish that their prescribed ABA treatment was medically necessary, and they did so through undisputed testimony by their treating physicians. At trial, Dr. Elza Vasconcellos, the treating neurologist for Plaintiffs K.G. and I.D., and Dr. Roberto Lopez Alberola, the treating neurologist for Plaintiff C.C., both testified that prescribed ABA was medically necessary to treat K.G., I.D., and C.C.'s autism or ASD. Defendant did not have Plaintiffs examined by the State's own physicians, nor did Defendant present any testimony challenging Plaintiffs' evidence of medical necessity. With regard to nonparties, the Court did not make any determination that ABA is medically necessary for any individual nonparty; the Court simply ruled that AHCA's wholesale determination that ABA was an "experimental" treatment – and therefore AHCA's denial ABA treatment for all Medicaid-eligible children in Florida – "was arbitrary, capricious, and unreasonable both in its process and its conclusion." (Order 11.) Accordingly, because Defendant's argument that "the Injunction exceeds the bounds of the allegations in the Amended Complaint and the evidence presented at trial" is baseless, Defendant is not likely to succeed on the merits on this

argument.

Defendant's third merits argument, that "the Injunction granted class-wide relief where no class was certified and where Plaintiffs do not have standing to seek relief for nonparties," is also unlikely to succeed. It is appropriate for injunctive relief to benefit nonparties without class certification. See Bailey v. Patterson, 323 F.2d 201, 206-07 (5th Cir. 1963).[5] In Bailey, the plaintiffs brought suit to enjoin enforcement of state and municipal segregation laws. See id. at 202-03. The Bailey Court found that it was unnecessary to determine whether the action was properly brought as a class action because "[t]he very nature of the rights appellants seek to vindicate requires that the decree run to the benefit not only of appellants but also for all persons similarly situated." Id. at 206. In so ruling, the Bailey Court cited to a school segregation case in which the former Fifth Circuit stated as follows:

> There is at least considerable doubt that relief confined to individual specified Negro children either could be granted or, if granted, could be so limited in its operative effect. By the very nature of the controversy, the attack is on the unconstitutional practice of racial discrimination. Once that is found to exist, the Court must order that it be discontinued. Such a decree, of course, might name the successful plaintiff as the party not to be discriminated against. But that decree may not – either expressly or impliedly – affirmatively authorize continued discrimination by race against others. Moreover, to require a school system to admit the specific successful plaintiff Negro child while others, having no such protection, were required to attend schools in a racially segregated system, would be for the court to contribute actively to . . . class discrimination . . . . In this light, <u>if it was error to treat the case as a class suit</u>

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

> and enter such a decree, such error, if any, was harmless since the decree for all practical purposes would have been the same had it been confined to the [named plaintiffs].

Id. at 206-07 (quoting Potts v. Flax, 313 F.2d 284, 289-90 (5th Cir. 1963)) (emphasis added). Subsequent cases follow Potts and Bailey in reiterating the principle that an injunction may benefit nonparties without class certification. For example, in United Farmworkers v. City of Delray Beach, Florida, the former Fifth Circuit remanded the case to the district court with instructions to issue an affirmative injunction that would benefit nonparties. See 493 F.2d 799, 812 (5th Cir. 1974). In that case, individual farm workers and a farm workers' organization sued the City of Delray Beach and other defendants for a racially discriminatory refusal to permit a proposed, federally-funded housing project to tie into the City's water and sewer systems. Id. at 800-01. The plaintiffs requested, inter alia, injunctive relief in the form of a letter of confirmation from the City to the appropriate federal agency stating that the City would provide the necessary water and sewer services for the housing project.[6] See id. at 804, 812. The district court had refused to allow the plaintiffs to proceed as a class and declined to issue the requested injunction. See id. at 812. The former Fifth Circuit found that it was unnecessary to determine whether the plaintiffs should have been allowed to proceed as a class because "the decree to which they are entitled is the same." Id. The Court elaborated, "Even with the denial of class action status, the requested injunctive and declaratory relief will benefit not only the individual appellants and the nonprofit corporation

---

[6] "The letter of confirmation was required before the [applicable federal agency] would give the project its final approval." United Farmworkers, 493 F.2d at 804.

15

but all other persons subject to the practice under attack." Id. The Court remanded the case to the district court with instructions to issue an injunction directing City officials to "issue the requested letter of confirmation and to allow the farm workers' housing project tie into the City's water and sewer system." Id. As another example, in Carmichael v. Birmingham Saw Works, a Title VII case, the Eleventh Circuit stated that "injunctive relief may benefit individuals not party to the action, and that classwide injunctive relief may be appropriate in an individual action." 738 F.2d 1126, 1136 (11th Cir. 1984)[7] (citing, inter alia, Evans v. Harnett Cnty. Bd. of Educ., 684 F.2d 304, 306 (4th Cir. 1982) (finding that injunctive relief was not barred just because the plaintiff did not certify the suit as a class action)).

Here, Plaintiffs successfully challenged an illegal state rule which applied to all Florida Medicaid-eligible children diagnosed with autism or ASD, including but not limited to Plaintiffs K.G., I.D., and C.C. The Court could not enjoin enforcement of the challenged Florida Behavioral Health Rule 2-1-4 only as it applied to Plaintiffs K.G., I.D., and C.C. (See Order 11 (quoting Rush v. Parham, 625 F.2d 1150, 1157 n.12 (5th Cir. 1980) (quoting 42 C.F.R. § 440.230(c))[8]; see also Declaratory Judgment, D.E. 144, at 7.) Furthermore,

---

[7] The Carmichael Court concluded that although it would be appropriate to issue injunctive relief in the form of reinstatement to a plaintiff as well as nonparties in a Title VII case, injunctive relief was inappropriate in that particular case because the plaintiff did not seek reinstatement and therefore would not benefit personally from the court granting that relief. See Carmichael, 738 F.2d at 1136.

[8] See also 42 C.F.R. § 440.240(b) ("The plan must provide that the services available to any individual in the following groups are equal in amount, duration, and scope for all beneficiaries within the group: (1) The categorically needy. (2) A covered medically needy group."))

enjoining the enforcement of AHCA's rule that prohibited the provision and funding of ABA treatment to Medicaid-eligible children with autism or ASD necessarily required an injunction that directed AHCA to "provide, fund, and authorize" prescribed, medically necessary ABA treatment to Medicaid-eligible children with autism or ASD, which included Plaintiffs K.G., I.D., and C.C. (See Order 26.) Thus, providing Plaintiffs with the requested relief required the Court to extend injunctive relief to all other Medicaid-eligible children in Florida with autism and ASD. In other words, the very nature of the rights Plaintiffs sought to vindicate required that the injunction run to the benefit not only of Plaintiffs but also for all persons similarly situated. See Bailey, 323 F.2d at 206. Accordingly, because the Court's injunction appropriately benefits nonparties, Defendant is not likely to succeed on the merits on this argument.

Second, Defendant has not shown that AHCA will be irreparably injured absent a stay. See Hilton, 481 U.S. at 776. Defendant again argues the same inaccurate characterization of the injunction discussed above – that is, that the Court enjoined the State from performing individual medical necessity determinations and that this prohibition has had a substantial economic cost which AHCA will be unable to recoup. As stated above, this argument is based on a fundamental misunderstanding of the Court's Order. Defendant attached the declaration of Ronique Hall to the Motion to demonstrate the costs of providing ABA treatment to Medicaid-eligible children. Even assuming without deciding that it is proper at this stage for the Court to consider evidence that was not previously in the record, the Court

finds that Hall's declaration does not establish that providing ABA treatment to Medicaid-eligible children has had a substantial cost. The declaration only notes that "482 requests for ABA services for Medicaid recipients under the age of 21 who were diagnosed with autism or Autism Spectrum Disorder" were "approved," and that "[t]he ABA services provided to these Medicaid recipients are to be paid for with Florida Medicaid funds." (Hall Declaration, D.E. 158-1, ¶¶ 4-5.) The declaration does not indicate whether funds have actually been paid to providers of ABA treatment, nor does the declaration state the actual cost to Florida of providing ABA treatment. (See generally id.) Accordingly, the Court finds that Defendant has not shown that AHCA will be irreparably injured absent a stay of the injunction.

Finally, Defendant has not shown that the public interest will be served by staying the injunction. See Hilton, 481 U.S. at 776. Defendant argues that "the public interest is best served by the stay of the Injunction as to the nonparties" because "if a service is not medically necessary for a particular Medicaid recipient, limited state and federal taxpayer funds should not be utilized to pay for it." (Motion 14-15.) As stated above, the Court's injunction does not prevent the State from performing individual medical necessity determinations. Furthermore, the public interest would not be served by staying the injunction as to nonparties because Medicaid-eligible children will suffer irreparable injury to their mental development if Defendant's stay is granted. Evidence at trial established that if children with autism or ASD do not receive ABA treatment in their primary years of development, the children may be left with irreversible language and behavioral impairments.

18

(See Order 24-25.) In addition, evidence at trial showed that autistic children who do not receive ABA treatment will likely be permanently disabled and need public support for the remainder of their lives, which would ultimately require more public funding than providing children with ABA treatment. (See id. at 25.) Accordingly, the Court finds that Defendant has not shown that the public interest will be served by staying the injunction.

V.      **Conclusion**

Accordingly, the Court finds that Defendant has failed to meet her burden for demonstrate circumstances warranting issuance of a stay. It is therefore **ORDERED AND ADJUDGED** that:

1.  Defendant's Motion for Partial Stay Pending Appeal (D.E. 158), filed on July 27, 2012, is **DENIED**; and

2.  Because the Court does not consider or rely upon the declaration of Jon S. Bailey that was attached to Plaintiffs' Sur-reply, Defendant's Motion to Strike the Declaration of Jon S. Bailey Attached to Plaintiffs' Sur-reply (D.E. 170), filed on October 2, 2012, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of March, 2013.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**