**Case No. 12-13785-DD**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

K.G., by and through his next friend, ILIANA GARRIDO;
I.D., by and through his next friend, NILDA RIVERA; and
C.C., by and through his next friend, RACHELLE CRAWFORD,

Plaintiffs-Appellees,

vs.

ELIZABETH DUDEK, in her official capacity as Secretary, FLORIDA AGENCY
FOR HEALTH CARE ADMINISTRATION,

Defendant-Appellant.

---

On Appeal from the United States District Court
Southern District of Florida

---

**AFFIDAVIT OF MIRIAM HARMATZ IN SUPPORT OF
PLAINTIFFS'/APPELLEES' APPLICATION FOR APPELLATE
ATTORNEYS' FEES**

---

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

BEFORE ME, the undersigned authority, personally appeared Miriam

Harmatz, who, being first duly sworn deposes and says:

1.      I am a senior health law attorney at Florida Legal Services, Inc., a not-

for-profit legal services program.  I have personal knowledge that the facts stated

Composite Exhibit B

in this affidavit are true. This affidavit is being used in support of Appellees'
Application for Attorneys' Fees related to this appeal.

2.      I am lead counsel in this civil rights case which successfully
challenged the Appellant/Defendant's ("AHCA") rule governing Behavioral
Health Services ("the Rule") as violating Plaintiffs' rights under the federal
Medicaid Act. The Rule violated Plaintiffs rights in two respects. First, it
explicitly excluded coverage of any behavioral health service for the treatment of
autism. Second, it failed to include ABA, the one treatment for autism that is
proven and effective, as a covered service.

3.      Plaintiffs requested an order that AHCA provide coverage of their
medically necessary ABA. D.E. 63 at 12(C)(iii).  Plaintiffs also requested both
prohibitory and affirmative injunctive relief that would impact nonparties as well
as themselves, i.e.: 1) an order enjoining AHCA to delete the Rule's exclusion of
behavioral health services to treat autism; and 2) an order enjoining  AHCA to
include ABA as a covered Medicaid treatment for children with autism. *Id.* at
12(C)(i)-(ii).

4.      At the trial court, AHCA argued: (1) ABA cannot be covered under
the Medicaid Act; and (2) even if it could be covered under Medicaid, AHCA had
decided ABA is "experimental" and, thus, not "medically necessary" for anyone.
AHCA further argued that granting Plaintiffs' requested affirmative relief would

cost the state a significant amount of money. AHCA never argued that the Plaintiffs' request for an affirmative order requiring the Agency to provide ABA as a covered benefit for treating EPSDT eligible children with autism was overbroad and could not be ordered absent a certified class.

5.      Both parties tried this case as one that would provide benefit to non-parties, with consequent costs to the state, if Plaintiffs prevailed.  Throughout the entire trial court proceedings, both sides presented argument and evidence to that effect.  For example, in the parties' Joint Scheduling Report, Plaintiffs stated that "the issue in this case is systemic and affects numerous indigent children in the state of Florida who suffer from autism and other autism spectrum disorders and whose doctors have prescribed behavioral health services, including ABA. Plaintiff filed this case seeking declaratory and injunctive relief which would remedy the [Rule's] alleged violation for all similarly situated children.  Plaintiff believes that the legality of the challenged state rule can be addressed by the Court without….moving for class certification." D.E. 27 at 3.  In the parties Joint Pretrial Stipulations, the Defendant included the estimated cost of adding coverage of ABA to the Florida Medicaid program.  D.E. 98-1 at 3.  The Defendant's Proposed Findings of Fact and Conclusions of Law, included an entire section entitled: "Cost of Adding ABA to Medicaid's State Plan." D.E. 115 at 10-11.

6.     After more than a year of intense litigation culminating in a four-day trial, Plaintiffs prevailed on all their claims, and the trial court entered orders granting Plaintiffs' requested injunctive and declaratory relief.  D.E. 123, 144

7.     AHCA then appealed arguing that the trial court abused its discretion by issuing orders that were purportedly overbroad in two separate respects. Appellant's Brief at ii, 1.[1]  First, AHCA argued that the injunction improperly required Medicaid coverage of ABA services regardless of individual medical necessity and barred the state from any role in that determination.  *Id.* at 13-25. Second, AHCA argued that the trial court improperly extended affirmative injunctive relief to non-parties in the absence of a class action.  *Id.* at 25-32.

8.     I am billing for the significant amount of time spent responding AHCA's second overbroad argument,   *"The Injunction is Overbroad Because It Extends Injunctive Relief to Nonparties."*   AHCA Brief at 25-32.  As detailed in the next two paragraphs, AHCA constantly shifted its position on this issue. First, the issue was never raised below, and AHCA's argument in the Initial Brief was completely at odds with the argument and evidence at the trial court. (*see* ¶¶4,5 *supra.*).  Then, in its Reply Brief, AHCA again shifted course.  In reply to Plaintiffs' painstaking explanation establishing that the trial court's affirmative

---

[1] Page references to the parties' Eleventh briefs will be to the pagination at the bottom of the page and not to the Court's electronic watermark at the top of the document

order requiring AHCA to provide ABA as a covered benefit was necessary to Plaintiff's complete relief (*see* Appellees' Brief at 36-38), AHCA pivoted. The Reply brief suddenly argued that the injunction's affirmative order was overbroad and an abuse of discretion because: 1) the Rule's covered services already "embraced" ABA as a covered service prior to the lawsuit; 2) ABA had only been denied to Plaintiffs and other children with autism because page 2-1-4 of the Rule (D.E. 63-1 at 1) explicitly excluded coverage of any behavioral treatment for autism spectrum disorders; and 3) the order directing deletion of the language at 2-1-4 excluding any treatment for autism was not being appealed. Reply Brief at 1-2, 10, N. 5. *See also* Appellees' Motion for Leave to File Supplemental Briefing, or in the Alternative, to Strike New Issues In Appellant's Reply Brief ("Plaintiffs' Motion").

9.     While, on the one hand, Plaintiffs welcomed the Reply Brief's representation that AHCA was not opposing ABA's inclusion as a covered Medicaid benefit, the Agency continued to prosecute its appeal without amending either their statement of the issues on appeal or their request that the orders be vacated and relief limited to the three Plaintiffs. Moreover, AHCA's Reply, which newly argued that ordering coverage of ABA was overbroad because ABA allegedly was already included in the Rule as a covered benefit and AHCA is amenable to its inclusion, departed radically from the Initial Brief and the trial

court record. *Compare, e.g.* Reply Brief at 10 N. 5 (AHCA asserting that the Rule already covered ABA prior to the lawsuit) ("the Handbook [Rule]describes covered services in terms that could easily embrace ABA") *with* (assertions at the district court that the Rule did not cover ABA and that AHCA will cease covering ABA for treating EPSDT eligible children with autism if successful on appeal) *e.g.* Pretrial Stipulations D.E. 98-1 at ¶ ¶37, 39 *("[t]he Rule does not provide coverage of ABA services. . . There is no exception in the rule for recipients under 21"),* and Defendant's Proposed Pretrial Findings of Fact and Conclusions of Law, D.E. 115 at 2, ¶ 3   (*"The Florida Medicaid Program does not cover ABA"*), and AHCA's notice to providers after entry of the injunction informing them that ABA is being covered pursuant to federal court order and how to apply for reimbursement and telling providers that AHCA intends to appeal the ruling, D.E. 140-2 at 1-3 (*"[i]f the ruling is overturned, Medicaid will cease to cover these services for the treatment of autism spectrum disorders"*) (emphasis added).  AHCA's  constant "moving of the goal posts"  forced Plaintiffs to spend time untangling the confusion and clarifying the record.

10.    In the end, Plaintiffs decidedly prevailed. The Eleventh Circuit rejected AHCA's protest that being ordered to affirmatively include ABA as a covered Medicaid benefit was an overbroad abuse of discretion.   "In sum, the district court did not abuse its discretion by issuing a permanent injunction that  . . .

requires Medicaid coverage of [ABA] treatment." Opinion at 18, ¶1.  This Court's decision also left completely intact those paragraphs of the Injunction operationalizing the affirmative relief benefiting nonparties by ordering AHCA to notify providers that ABA is now a covered service and designate authorization codes for ABA treatment.  D.E. 123 at 26, ¶¶3-5

11.    Upholding Plaintiffs' requested systemic affirmative relief was a hard fought and important victory.  Had this Court vacated the affirmative relief as requested by AHCA, the outcome would have deprived Plaintiffs of their complete relief (*see* Appellees' Brief at 36-38) and had serious adverse implications for future Medicaid beneficiaries.

12.    Had AHCA prevailed, beneficiaries seeking to challenge a statewide policy would be well advised to only do so through a class action. Such an outcome would have been plainly adverse to Medicaid beneficiaries and the public interest.

13.    Bringing this challenge in an individual action was much less resource intensive than a class action--both for the parties and the court.  Had a class been certified, additional time and resources would have been necessary for class action related activities, *e.g.* class notice under Rule 23(c)(2),  Moreover, there would likely be ongoing demands on the limited time and resources of counsel and of the district court.  Parents of certified class members would likely seek to bring

grievances regarding their child's ABA services before the district court.  For example, a *pro se* father of five autistic children recently filed a motion for contempt.  D.E. 172.  Because this was not a class action, involvement of undersigned counsel, who works for a non-profit legal services program with extremely limited resources, was not required.  Similarly, the limited resources of the district court were not unnecessarily taxed as the motion was appropriately dismissed in a straightforward two (2) page order.  D.E. 184.

14.    With the exception of AHCA's appeal in this case, undersigned counsel is not aware of any state Medicaid agency ever questioning whether Medicaid beneficiaries could be awarded affirmative injunctive relief extending to nonparties without a certified class.  Indeed, individual Medicaid beneficiaries routinely challenge state Medicaid policies seeking affirmative orders which are necessary for their own complete relief and which, if successful, will also benefit nonparties.  *See* Appellee's Brief at 31.  Because the issue had never been raised in a Medicaid case—either at a trial court or circuit court—Plaintiffs' complex research and writing challenges were compounded

15.    Because the stakes were so high, both for these Plaintiffs and future Medicaid beneficiaries, I had to do everything possible to ensure that the trial court's order of affirmative systemic relief was not vacated.  This required significant time identifying and analyzing the multitude of cases dealing with the

issue of "overbroad injunctions." It also required laboriously crafting a brief that logically and persuasively explained why the systemic relief sought and granted in this individual Medicaid case was appropriate under Rule 65 and governing authority and why it was necessary for the Plaintiffs' complete relief given how the Medicaid program functions.

16.    In closing, with regard to AHCA's second claim, it should be noted that Plaintiffs could have brought this challenge as a class action. Ironically, the time required to certify a class would likely have been much less than the time spent responding to this single contested issue on appeal. Had AHCA raised the issue below, Plaintiffs could have simply moved for class certification under Rule 23(b)(2). Commonality and typicality would have been easily satisfied as Defendant claimed ABA was not covered under Medicaid and was experimental and thus not medically necessary for anyone. The numerosity requirement would have likewise been easily met as the Defendant offered evidence that the requested injunction impacted thousands of children. But while a class could have been readily certified, it was not required under Rule 23, Rule 65 or any other authority. This individual lawsuit was an appropriate and efficient vehicle for challenging an illegal state policy. The affirmative injunction requiring AHCA to provide ABA as a covered treatment was necessary for Plaintiffs' complete relief and properly benefits other EPSDT eligible children with autism as well. In terms of the

9

significant time expended on this appeal, it is regrettable that AHCA waited until after entry of final judgment before arguing that affirmative injunctive relief benefiting nonparties without a certified class was overbroad. As Plaintiffs ultimately prevailed on this issue, we are entitled to reasonably requested fees.

17.    Regarding AHCA's first overbroad argument, it is beyond dispute that ABA must be medically necessary for every individual in order to be covered and that the State can play a role in that determination. Plaintiffs never took the position that ABA should be covered when it is not medically necessary for an individual.  With respect to nonparties, Plaintiffs' argument and the trial court's decision focused on AHCA's macro level decision to exclude coverage for ABA altogether.  *See, e.g.*, Appellees' Brief at 16-22; D.E. 98-1 at 12, sec. 7, ¶2; D.E. 164 at 3-4; D.E. 166; D.E. 169 at 2-3; D.E. 183 at 13, 18.  While contending that the trial court did not order otherwise, Plaintiffs readily agreed to appropriate modifications that would clarify the orders to reflect these undisputed standards. *See e.g.*, Appellees' Brief at 22,  September 13, 2013 Oral Argument. Nevertheless, because this Court did order modification of paragraphs 2 and 6 of the injunction (deleting reference to non-parties) and insertion of two paragraphs in the declaratory judgment (reiterating that  the state can play a role in individual medical necessity determinations), I am  not billing for time spent on this issue.

**Billing**

18.     I have completed  the Eleventh Circuit's form listing my billed hours by category, along with a compilation of my time records for professional services rendered in the appeal of this case. I kept contemporaneous billing records, and these billing records represent an accurate account of the time for which I am seeking fees in this appeal. These documents are included in Plaintiffs' Composite Exhibit A.

19.     In compiling my time, I have used billing judgment. I am not billing for time or services that I determined to be duplicative, excessive, redundant, non-compensable, or which I otherwise  properly excluded in the exercise of billing judgment. This "non-billed" time is also enumerated in my billing records.  As stated above,  I am also not billing for time spent on the undisputed issue of individual medical necessity issue and the state's role in that determination (AHCA's first overbroad issue).

**Hourly Rate**

20.     I am a senior health law attorney with Florida Legal Services, Inc. ("FLS"), a non-profit organization representing low-income Floridians on a variety of issues including access to healthcare. I am one of the most experienced attorneys in the state of Florida specializing in advocacy on behalf of Medicaid beneficiaries.  I have been lead counsel on a number of successful Medicaid cases

11

that have provided significant benefit for low-income Floridians including *e.g., Smith v. Benson*, 703 F. Supp. 2d 1262 (S.D. Fla. 2010) (finding that the state Medicaid agency's rule excluding coverage of diapers for medically incontinent children violated the Medicaid Act, and ordering the Defendant to provide coverage of diapers for the Plaintiff and thousands of other medically incontinent children who rely on Medicaid); *Edmonds et al. v. Levine*, 417 F. Supp. 1323 (S.D. Fla. 2006) (finding the state's refusal to cover off-label uses of a particular drug found to be effective in treating patients suffering from neuropathic pain and other conditions violated the federal Medicaid Act and granting permanent injunction ordering the state to provide coverage), *Hernandez et. al v. Medows* 209 F.R.D. 665 (S.D. Fla. 2002) (certifying class of current and future Medicaid recipients whose prescription coverage is denied without written notice of the reason or the opportunity for a hearing, and Final Order requiring written notice if prescription is denied and immediate supply of the medication and continued coverage for refill prescription.  My resume is attached to this Affidavit, both of which are included in Composite Exhibit B.

21.     My most recent fee award was in *Edmonds v. Levine*, 417 F. Supp. 1323. The Court determined that a rate of $400 per hour would be a reasonable rate for the work I did in a 2005 Medicaid class action case against this same Defendant.  *See* Fee Order, 2009 WL 1012193 at * 5 (S.D. Fla 2009).  In a more

recent Medicaid case against the Defendant, *Smith v. Benson*, 703 F. Supp. 2d 1262, I requested $450 per hour. The parties settled the fee matter shortly after the fee petition was filed. *See Smith,* No. 1:09-cv-21543, D.E. 94; D.E. 101).

22.     My request for a rate of $490 per hour for work done at the trial court in this case between 2011 and 2012, represented approximately a 3% annual increase in my hourly rate based on the $400 rate that the *Edmonds* Court held was reasonable for work done in 2005. This is well within the range of reasonable rates for attorneys with my experience. *See* D.E.136-2 at 3, 4, Exhibit 8. My rate request of $500 an hour for work done in this appeal represents less than a 3 % increase. This is well within the rate increases for attorneys of my experience in Miami for the past year.[2]

23.     Plaintiffs/Appellees seek fees for the work done by the five attorneys: Miriam Harmatz, Betsy Havens and Margaret Kosyk of Florida Legal Services (FLS); Monica Vigues-Pitan of Legal Services of Greater Miami, Inc. (LSGMI), and Jane Perkins of the National Health Law Program. All attorneys are seeking fees for tasks requested by lead counsel and that were necessary to the successful outcome of this appeal. Tremendous efforts were made to avoid duplicative billing. In addition, individual attorney time records demonstrate a significant

---

[2] *Lawyer Compensation Survey: Firms Take Baby Steps In Raising Rates*, DAILY BUSINESS REVIEW (Oct. 4, 2013), *see* attached Ex. 3.

number of the hours as "not billed." For example, in an ongoing exercise of billing judgment I contemporaneously recorded almost 30 % of my time as "not billed."

24.     As lead counsel, I had primary responsibility for directing Plaintiffs' efforts to settle this appeal, for drafting the Plaintiffs/Appellees brief and for oral argument.  I also had primary responsibility for responding to the AHCA's Reply Brief.

25.     Co-counsel Jane Perkins, Legal Director for the National Health Law Program, has more experience representing Medicaid beneficiaries in Medicaid litigation—both at the trial and appellate level than any other attorney in the country.  As demonstrated by the prolific list of publications in her resume, including the definitive resource relied upon by Medicaid attorneys, *The Advocate's Guide to the Medicaid Program*, Ms. Perkins is the nation's foremost expert in Medicaid law. Ms. Perkins and I worked together in developing and outlining Appellees' brief, as well as all potential questions that could be presented at oral arguments.   I consulted with Ms. Perkins frequently throughout the course of the appeal, particularly during the mediation process and in preparation for oral argument. Her skill and judgment in Medicaid litigation, both at the trial court and appellate level, is second to none.

26.     Co-counsel Monica Vigues-Pitan and Betsy Havens performed a variety of specific tasks throughout the appeal.  In an ongoing scrupulous exercise

of billing judgment, they did not bill for a significant portion of the time they spent working on the appeal.  For example, when Ms. Perkins and I discussed various aspects of the appeal, Ms. Haven and Ms Vigues-Pitan frequently joined the calls but did not bill for that time.  Nor did they bill for the time they spent in researching and reviewing items related to appellate procedure or for much of the time they spent reviewing multiple drafts of our brief.   They did appropriately bill for the discreet research and  editing tasks and other discreet tasks related to the appeal that I requested they perform.  They also appropriately billed most but not all of the several  days of work prior to filing our brief when the three of us  spent 12-14 hours per day in final production of  Appellees' Brief.  They also participated in several moot courts and did extensive preparation in order to fully perform the role of panel members and/or AHCA's attorney.  They appropriately billed for a portion, but not all of that time.

27.    Margaret Kosyk, an outstanding new attorney, was co-lead in preparing this fee application.  She did all of the necessary research and co-authored the memo in support of fees.  She also reviewed all time records and affidavits of the Plaintiffs' attorneys and prepared the final submission of this application.  As we spent time together discussing the fee application and memo, she scrupulously discounted her billable time by over 50%.

FURTHER AFFIANT SAYETH NOT.

_____

Miriam Harmatz, Esq.


STATE OF FLORIDA
COUNTY OF MIAMI-DADE COUNTY

The foregoing was sworn to me before this ⟶24 day of October 2013 by

Miriam Harmatz.  Such person did take an oath and (notary must check applicable

box):

       ☑ Is are personally known to me.
       ☐ Produced a current Florida driver's license.
       ☐ Produced _____ as identification.


{Notary Seal must be affixed}

_____
Signature of Notary

ERIKA M. ALONSO
MY COMMISSION # EE872161
EXPIRES February 06, 2017
(407) 398-0153   FloridaNotaryService.com

Name of Notary _____
Commission Number EE872161
My commission expires 2/6/17

16

**MIRIAM HARMATZ**
Florida Legal Services, Inc.
3000 Biscayne Blvd., Suite 102
Miami, FL 33137
305/573-0092 ext. 206
miriam@floridalegal.org


| | |
|---|---|
| **EDUCATION:** | B.A., 1975, Stanford University, Palo Alto, CA |
| | J.D., 1979 University of Wisconsin Law School, Madison WI |
| **ACADEMIC HONORS:** | Phi Beta Kappa, 1975 |
| | Honors in Social Thought and Institutions, 1975 |
| **BAR MEMBERSHIPS:** | Kentucky, Florida |
| **COURT ADMISSIONS:** | United States District Courts for the Western District of Wisconsin, the Western District of Kentucky, and the Southern District and Middle District of Florida; the Eleventh Circuit Court of Appeals |

**WORK EXPERIENCE:**

January 1996 -
Present                   Senior Health Law Attorney, Florida Legal Services, Inc./Miami Advocacy Office, 3000 Biscayne Blvd., Suite 450, Miami, FL   33137

Legislative/administrative advocacy and litigation regarding health law issues affecting low-income Floridians.   Provide statewide support to programs serving low-income clients, including providing Medicaid training events, co-counseling on significant litigation, consultation, and technical support.   Community education and   advocacy regarding immigrant access to health care in Miami/Dade county.

August 2010-
December 2012       Adjunct Professor, Florida International University School of Law, Health Law Clinic

1985 - 1995            Staff Attorney, Legal Services of Greater Miami, Inc.
3000 Biscayne Blvd., Suite 500, Miami, FL   33137

1992 - 1996 Co-head of Public Benefits Unit; Co-chair of state-wide Health/Senior Workgroup.

1983 - 1985            Staff Attorney, Appalachian Research and Defense Fund, Columbia, KY

1

| 1981 - 1982 | Directing Attorney, Palau Office of Micronesia Legal Services Corp., Koror, Palau, Western Caroline Islands |
| 1979 - 1980 | Attorney/Advisor, Environmental Protection Agency, Washington D.C. |

## SIGNIFICANT CASES

**Lead Counsel:**

***Smith v. Benson***, 703 F. Supp.2d 1262 (S.D. Fla.)

Represented severely disabled incontinent Medicaid recipient challenging state rule that excluded coverage of diapers.   Under federal Medicaid law states are required to cover medically necessary services,   including medical supplies such as diapers, for recipients under age 21.   The Court granted Plaintiff's motion for summary judgment and enjoined the state Medicaid Agency from denying coverage of medically necessary diapers and ordered permanent injunctive relief. Although the case was not a class action, the ruling benefits over 12,500 medically incontinent Florida Medicaid recipients under 21 who had been unable to get coverage for their needed diapers.   Attorney's fees of over $ 178,000 were awarded.

***Reid et al. v. Agwunobi,*** Case No. 08-60040 Civ-Zlock (S.D. Fla. 2008.)

Successfully represented   class of Medicaid recipients in counties where recipients are required to enroll in managed care plans. The case challenged Medicaid Agency's failure to provide the requisite notice regarding good cause disenrollment rights form Medicaid managed care organizations.   After filing Plaintiffs' Summary Judgment Motion, the Agency agreed to amend their notices and choice counselor script to comply with federal law the case and the parties entered into a Settlement Agreement.

***Edmonds et al. v. Levine***, 417 F. Supp. 2d 1323 (S.D. Fla. 2006)

Class action challenging state policy of denying off-label uses of a widely prescribed drug. Under federal Medicaid law, states are required to cover prescription drugs   for "medically accepted indications," which the statute defines as uses approved by the FDA (on label) or "off-label" uses that are supported by citation in one of three Congressionally specified compendia. Florida is only covering the two FDA approved uses and two off-label uses although there are over 50 therapeutic uses of the drug cited in one of the compendia. Plaintiffs' motion for summary judgment was granted, and the Court ordered permanent injunctive relief. Attorneys' fees of over $ 280,000 were awarded.

***Hernandez et al. v. Medows***, No. 02-20964, U. S. Dist. Ct., S.D. Fla.

Successfully represented class of present and future Medicaid recipients whose prescription drug claims were denied without notice or hearing rights guaranteed under federal Medicaid law and Due Process Clause of Fourteenth Amendment.   Court certified the class, *see Hernandez v. Medows*, 209 F.R.D. 665, and the parties subsequently settled the case.   Relief includes the right to written notice of the reason for coverage rejection, the opportunity for appeal, and the circumstances in which ongoing coverage can be maintained pending the outcome of the appeal. Attorneys' fees of $857,000 were awarded.

***Cross Creek Health Care v. DeCosta***, 818 So. 2d 502, (Fla.1st DCA 2002)

Successfully represented client in appeal of nursing home discharge.

***Harris et al. v. Cook***, No. 96-2994 Civ (S.D. Fla. 1996)

Class action which challenged the Agency For Health Care Administration's (AHCA) approval of a plan that eliminated Medicaid coverage of nonpublic transportation services for all mental health day treatment patients in Dade County.   The court entered a consent order granting the due process relief prayed for in the complaint and attorneys' fees were awarded.

***Kurnik v. Agency for Health Care Administration***, 661. So. 2d 914 (Fla. 1st DCA 1995)

Represented client who suffered out-of-pocket losses due to agency errors.   Court found that Florida's policy of providing reimbursement only to providers violated client's rights under federal Medicaid law and ordered client reimbursement.

***Dalger et al. v. Jackson Memorial Hospital (JMH)***, (HHS/OCR No. 04-92-3007)

Represented class of clients denied inpatient admissions to the public county hospital (JMH) because they could not pay inpatient admission deposits.   In settlement of this Hill-Burton class complaint, JMH agreed to: no longer charge admissions deposits to Dade county residents with incomes below 100% FPL; waive deposit for those with incomes above FPL if condition could become emergency if left untreated; no longer require verification of indigence other than personal affidavits and provide clients with notice and appeal rights regarding their financial evaluations. Based on this case, received 1992 Alfred Feinberg Memorial Award for excellence in legal work affecting the poor.

***Little et al. v. Secretary of Dept of HRS,*** No. 80-2854 Civ. (S.D. Fla. 1991)

Represented class of District XI food stamp recipients whose applications were illegally delayed by the state.   Brought three separate contempt proceedings: 1987, 1989, 1991.   In each proceeding, the court entered Consent Decrees in which the defendant admitted violating federal food stamp regulations and agreed to implement extensive corrective actions.

*Domenech v. Secretary of DHHS*, 913 F.2d 882 (11th Cir. 1990)

Represented client whose disability benefits had been terminated. Court reversed termination decision pursuant to claim that beneficiary was deprived of his due process rights by not being allowed to cross-examine a physician who examined the claimant post-hearing.

*G.E.Y. v. Cabinet for Human Resources*, 701 S.W. 2d 713 (Ky. App. 1985)

Represented client whose parental rights had been terminated.   Court reversed the termination decision based on argument that trial court improperly allowed, over hearsay objections, the client's case record.

**Co-Lead Counsel or Co-counsel:**

*C.F. v. Dept. of Children and Families*, 934 So. 2d 1 (Fla. 3rd DCA 2006)

Successfully challenged the state's reduction of personal care services (PCA) for severely disabled child.   The Court found that the state was using an overly restrictive definition of PCA and medical necessity in violation of federal Medicaid law.

*Albo v. DOEA, DCF, AHCA,* **DOAH** Case No. 02-1481 RX 02-1482RX, 02-1483RX

Successfully challenged state rules which required that applicant for Medicaid waiver services already be receiving the waiver services and case management before eligibility determination could be performed.

*Grissom v. Sec. Agency for Health Care Administration*, Case No. 6:01 VC-785-ORL-19-DAB (M.D. Fla. 2001).

Successfully challenged state's refusal to guarantee coverage of liver transplant for client.   After filing complaint and motion for temporary restraining order, state agreed to ensure coverage and case was dismissed.   Attorneys' fees were received.

*Bell v. Agency for Health Care Administration*, 768 So. 2d 1203 (Fla. 1st DCA 2000).

Represented Medicaid recipient in successful appeal of DOAH hearing that upheld the validity of state rule dealing with durable medical equipment.   The DCA held that the rule violated federal law by failing to provide procedure for adult Medicaid beneficiaries to request supplies not on the approved list.

*Grant et al. v. Kearney et al.*, Case No. 99-2147 Civ Hoeveler, (S.D. Fla. 1999).

Challenged state's termination of parents and children from Medicaid when they lost cash assistance.   During the course of the litigation state remedied its unlawful termination policies and notice deficiencies.   Case settled and attorneys' fees were received.

4

***Padron et al. v. Feaver***, Case No. 97-2883-Civ-Highsmith (S.D. Fla. 1997)

Successfully challenged state policy of failing to process Medicaid applications referred to it by the SSA after concurrent applications for SSI were denied.   Prior to successful settlement, class was certified and motion to dismiss denied. *See Padron v. Feaver*, 1800 F.R.D. 448 (S.D. Fla. 1998).   Received attorney's fees.

***Reynolds v. Agency for Health Care Administration***, Case No. 96-1682 RX, D.O.A.H.

Successfully challenged state rule limiting Medicare reimbursement of deductible and co-insurance to the state's Medicaid reimbursement limit.   Since Medicaid payment level is substantially lower than Medicare's, this policy resulted in many private physicians not serving dual eligibles or improperly seeking out-of-pocket costs from them.

**Selected Lectures/Presentations**:

*Florida Due Process Rx Litigation: Lessons Learned and Unanswered Questions,* National Health Law Program annual conference, December 2011

*Florida Medicaid 101,* Florida Legal Services State-Wide Training, Tampa, Florida, October 2009 (CLEs awarded)

*EPSDT: What Does it Mean for Your Clients and How Can You Use it?,* Florida Guardian ad Litem Training, November 2008

*Proudly They Waive: The Use of Destructive Waivers to Undermine Medicaid*, Families USA Health Annual Conference, Washington, D.C., January 2006

*State Medicaid Prescription Drug Cuts: What Can State Advocates Do*, National Health Law Program Annual Conference, Washington D.C., December 2005

*Medicare Prescription D: What Can State Advocates Do*, National Legal Aid and Defender's Association Annual Conference, July 2005

*When Good Waivers Go Bad: What Can State Advocates Do*, Families USA Health Annual Conference, Washington, D.C., January 2005

*Florida Medicaid 101*, Orlando, Florida, March 2005 (CLEs awarded)

*Dealing with Mental Health: Access to Care for Children on Medicaid,* Public Interest Law Section, Florida Bar, June 2004

*Medicaid Prior Authorization Issues: Dangers to Consumers and How Advocates Can Minimize Problems*, Health Access Partnership Annual Conference, January 2004 (CLEs awarded)

*Due Process Issues in Medicaid and Medicare*, National Health Law Program Annual Conference, Washington D.C., December 2003

*Medicaid Prescription Drug Program: What Can Social Workers do if Coverage is Denied*, Florida Society of Oncology Social Workers, October 2003   (CEUs awarded)

*Medicaid Waivers: Home and Community Based Services*, South Florida Guardianship Association, May 2003

*Prior Authorization and Supplemental Rebates in Medicaid*, Families USA 2003 Health Action Conference, January 2003

*Medicaid Prescription Drug Issues,* National Health Law Program Annual Conference, Washington D.C., December 2002 (CLEs awarded)

*Confronting Barriers to Quality Health Care for Immigrants*, National Legal Aid and Defender Association Conference, December 2001

*Health Advocacy for Children and Families*, Orlando, FL September 2001 (CLEs awarded)

*Data Collection Regarding Transitional Medicaid and Section 1931 Medicaid Coverage*, Center on Budget and Policy Priorities Conference, December 1999

*Issues and Concerns in Florida's New Children's Health Insurance Program*, Children's Defense Fund Conference on State Child Health Insurance Programs, 1998

*Health Law Reform Update*, February 1998

**Selected Writing and Training Materials (unpublished):**

*Health/Public Benefits Advocacy Skills Training* (co-authored), September 2003

*Confronting Barriers to Quality Health Care for Immigrants*, December, 2001

*Health Advocacy for Children and Families*, September, 2001
*Medicaid Waivers: What Are They & How Do You Get In One,* October 2000

*Immigrant Health Care Access in Dade County,* October 1999

*The Florida Medicaid Managed Care Manual*, An Advocate's Guide, December 1996

Senior Honors Thesis, "*National Health Insurance: Why Did the Kennedy-Griffiths Health Security Act Fail in the 93rd Congress*"

6

**Honors and Awards**:

1992   Legal Services of Greater Miami Alfred Feinberg Memorial Award

2006   Florida Bar Foundation Steven M. Goldstein Award for Excellence: Lead
       Attorney on first place award for Prescription Dug Access Project

2007   Daily Business Review Award for Most Effective Class Action Lawyer:

2010   Daily Business Review Award for Most Effective Public Interest Lawyer:

2013   Florida Bar Foundation Paul Doyle Award for Children's Advocacy Award

Case No. 12-13785

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

ELIZABETH DUDEK, in her official capacity as
SECRETARY, FLORIDA AGENCY FOR
HEALTH CARE ADMINISTRATION,

        Defendant-Appellant,

v.

K.G., by and through his next friend,
ILIANA GARRIDO, I.D., by and through his
next friend, NILDA RIVERA, and C.C., by and
through his next friend, RACHELLE CRAWFORD,

        Plaintiffs-Appellees.

_____

Declaration of Jane Perkins Supporting
Plaintiffs' Motion for Attorneys' Fees and Costs

I, Jane Perkins, J.D., M.P.H. declare as follows:

1.  I am an adult and competent to testify. If called as a witness in this

action, I would truthfully and competently testify consistent with the following.


2.  I am the Legal Director of the National Health Law Program (Health Law

Program). I have worked at the Health Law Program for 28 years. The Health Law

Program is a non-profit law firm that provides technical and co-counseling

assistance to poverty law and disability rights attorneys and to clients, nationwide,

1

on the range of health issues affecting the poor. My substantive areas of expertise are Medicaid, child health, and court access. My resume is attached as Exhibit A.

3.   I am co-counsel with Florida Legal Services and Legal Services of Greater Miami in this matter. I make this affidavit in support of the plaintiffs' motion for attorneys' fees.

4.  I received my J.D. from the University of North Carolina, Chapel Hill, in l981, and a Masters Degree in Public Health from the University of California, Berkeley, in l982. I am admitted to the Bar in North Carolina (1981), California (1982), and Maryland (inactive). I am also admitted to practice before the United States Supreme Court and ten of the federal circuit courts of appeals, including the Eleventh Circuit.

4.  Over the years, I have served as lead or co-counsel in a number of Medicaid cases, including:

> *K.C. v. Wos*, 716 F.3d 107 (4th Cir. 2013) (affirming preliminary injunction requiring Medicaid due process in managed care program)

> *Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) (affirming Medicaid and ADA coverage of personal care services)

> *Davis v. Shah*, 2012 WL 1574944 (W.D. N.Y. May 3, 2012) (preliminary injunction requiring Medicaid coverage of orthotic shoes and compression stockings)

> *Wood v. Betlach & Sebelius*, 2013 WL 474369 (D. Ariz. Feb. 7, 2013) (finding federal approval of copayments as part of demonstration project arbitrary and capricious)

*Newton Nations v. Betlach,* 660 F.3d 370 (9th Cir. 2011), *rev'g in part & aff'g in part*, 2010 WL 1266827 (D. Ariz. Mar. 29, 2010), *same case*, 316 F. Supp. 2d 883 (D. Ariz. 2004) (finding approval of Medicaid copayment demonstration project violated Social Security Act)

*Hiltibran v. Levy*, 793 F. Supp. 2d 1108 (W.D. Mo. 2011) (Medicaid and ADA coverage of home health services)

*McCartney v. Cansler*, 608 F.Supp.2d 694 (E.D.N.C. 2009), *aff'd,* 382 Fed. App'x 334 (4th Cir. 2010) (denying motion to dismiss Medicaid due process case)

*Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980 (S.D. Cal. 2010) (preliminarily enjoining cuts in in-home services in ADA/Medicaid case)

*DW v. Walker*, 2009 WL 1393818 (S.D. W.Va., May 15, 2009) (denying motion to dismiss Medicaid EPSDT case)

*Salazar v. District of Columbia*, 750 F. Supp. 2d 65 (D.D. C. 2010), *same case*, 1996 WL 768038 (D.D.C. Oct. 16, 1996), *same case*, 938 F. Supp. 926 (D.D.C. 1996) (requiring coverage of EPSDT for Medicaid-eligible children)

*Crabtree v. Goetz*, **2008 WL 5330506** (M.D. Tenn. Dec. 19, 2008) (preliminary injunction under ADA)

*Lankford v. Sherman*, 451 F.3d 496 (8th Cir. 2006) (Medicaid coverage of medical equipment and supplies)

*Edmonds v. Levine,* 417 F. Supp. 2d 1323 (S.D. Fla. 2006) (Medicaid coverage of outpatient prescription drugs)

*Westside Mothers v. Haveman*, 454 F.3d 542 (6th Cir. 2006), *aff'g in part, rev'g in part, & mod.*, 368 F.2d 740 (E.D. Mich. 2005) (allowing plaintiffs to proceed with Medicaid EPSDT case, finding no Eleventh Amendment or enforcement bars)

*Cyrus v. Walker*, 409 F. Supp. 2d 748 (S.D. W.Va. 2005) (Medicaid due process in home and community based settings)

*Antrican v. Buell*, 290 F.3d 178 (4th Cir. 2002), *aff'g,* 158 F. Supp. 2d 663 (E.D.N.C. 2001), *cert. denied*, 537 U.S. 973 (2002) (allowing plaintiffs to proceed with Medicaid EPSDT case, finding no Eleventh Amendment bars)

*Blue v. Bonta*, 99 Cal. App. 4th 980, 121 Cal. Rptr. 2d 483 (Cal. Ct. App. 2002) (requiring Medicaid coverage of stairway chairlift for individuals with disabilities)

*Chisholm v. Hood*, 133 F. Supp. 2d 894 (E.D. La. 2001) (requiring Medicaid EPSDT coverage of behavioral and psychological services for autistic children), *same case*, 110 F. Supp. 2d 499 (E.D. La. 2001) (same re: occupation, speech and audiological therapy)

*Sanders v. Lewis*, No. 2:92-0353 (S.D. W.Va. )(Order and Compliance Plan, March 1, l995) and (Summary Judgment, Aug. 16, l993), *reprinted at* CCH Medicare & Medicaid Guide ¶ 43,120 (requiring EPSDT outreach and periodic screening for children in out-of-home placement)

*Citizens Action League v. Kizer*, 670 F. Supp. 874 (N.D. Cal. 1987), *rev'd*, 887 F.2d 1003 (9th Cir. 1989) (Medicaid estate recovery)

*Frank v. Kizer*, 261 Cal. Rptr. 882 (Ct. App. 1989) (Medicaid notice and hearings)

*Jackson v. Stockdale*, 264 Cal. Rptr. 525 (Ct. App. 1989) (Medicaid dental services)

Additional cases in which I have participated as lead- or co-counsel are cited in my resume.

5.  I have authored a number of publications, including:

*The Supreme Court's 2012-13 Term: Court Access Barrier?—"Too Darn Bad,"* 47 Clearinghouse Rev. J. of Poverty L. & Pol. __ (forthcoming Nov.-Dec. 2013)  (co-authored)

*Implications of the Supreme Court's ACA Medicaid Decision*, 41 J. of Law, Med. & Ethics, 77 (Spring 2013)

*Sunshine and Accountability: The Pursuit of Information on Quality in Medicaid Managed Care,* 5 <u>St. Louis U. J. of Health L. & Pol.</u> 153 (2011) (co-authored).

*Access Issues in the U.S. Supreme Court's 2010 Term: Litigation is Not Getting Any Easier*, 45 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 345 (Nov.-Dec. 2011)

*The U.S. Supreme Court's 2009 Term: Justice Steven's Last Round in the Access Battle,* 44 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 342 (Nov.-Dec. 2010) (co-authored).

*Negotiating Consent Decrees that Work*, 41 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 500 (Jan.-Feb. 2008)

*The Supreme Court's 2006-2007 Term: The Shift to the Right Takes Shape,* 41 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 442 (Nov.-Dec. 2007) (co-authored)..

*Children's Health Under Medicaid: A National Review of Early and Periodic Screening, Diagnosis and Treatment* (May 2005) (co-authored)

*Using Section 1983 to Enforce Federal Laws*, 38 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 720 (Mar.-Apr. 2005)*Preserving Civil Liberties: Chipping at the Core of Justice*, 40 <u>Trial</u> 28 (Apr. 2004) (co-authored)

*Toward a Healthy Future: Medicaid Early and Periodic Screening, Diagnostic and Treatment Services for Poor Children and Youth* (April 2003)

*Sandoval's Retrenchment on Civil Rights Enforcement: The Ultimate Sorcerer's Magic*, 35 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 433 (Nov.-Dec. 2001) (co-author)

*Beyond Bush v. Gore: Highlights from the Supreme Court's 2000-2001 Decisions*, 35 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 373 (Nov.-Dec. 2001) (co-author)

*Maintaining Health Services for Children Amid Welfare Confusion: The Importance of Early and Periodic Screening, Diagnosis and Treatment*, 32 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 450 (Jan.-Feb. 1999)

Additional selected articles are listed in my resume.

6. Having practiced health law in the federal courts for nearly 30 years, I know that Medicaid cases can be among the most difficult. To begin with, as Judge Friendly of the Second Circuit Court of Appeals noted, the Medicaid Act "is almost unintelligble to the uninitiated." *Friedman v. Berger*, 547 F.2d 724, 727, n. 7 (2nd Cir. 1976). To complicate matters, federal court access has become more restrictive. Plaintiffs who seek redress in the federal courts must meet, and continue to meet, exacting requirements that affect all aspects of the case. This includes whether the plaintiffs have standing, whether the case is ripe or has become moot, whether the plaintiffs have a private cause of action to enforce the federal law, whether the state defendant has sovereign immunity over the claim, and whether the relief the plaintiffs' seek is proper. I have dealt with these issues in numerous cases, engaging in both briefing and oral argument of them at the district and appellate court levels.  I have also served as an editor of the *Federal Practice Manual for Legal Aid Attorneys*, focusing on the Manual's discussion of Causes of Action and Relief.

7.  Miriam Harmatz served as lead counsel in the case. I worked with Ms. Harmatz on many aspects of the case. In particular, my work focused on helping to

develop and research our response to the legal arguments raised by the appeal, strategic decision making, and preparation of pleadings.

8.  As counsel in this case, I recorded my time contemporaneously throughout the day in tenth-hour intervals. The table, attached as Exhibit B, accurately summarizes my activities and time spent on this case up through October 21, 2013. Exhibit B represents an accurate account of the time for which I am seeking fees up through October 21, 2013. On Exhibit B, all entries of time expended, dates, and work performed are those I personally made. In calculating my requested fee, I am not billing for time or services that I determined to be excessive, redundant, non-compensable, or which otherwise I properly excluded in the exercise of billing judgment.  Thus, I have not requested payment for all of my time spent on this case, including time spent on initial and periodic case file reviews, background legal research, and short telephone conversations and email exchanges. I have also omitted or reduced billing for non-legal tasks, time spent developing issues or claims that were not ultimately presented to the Court, internal discussions of the case with knowledgeable members of the Health Law Program staff, time spent on this case by our law students, and conversations and activities that duplicated work that was the responsibility of other members of the litigation team.

9.  I am requesting an hourly rate of $525.00 based on my understanding of the range of rates charged by lawyers with experience and qualifications similar to mine in the Miami area who are engaged in civil litigation.

10.  Previous courts have recognized my litigation expertise in their opinions regarding attorneys' fees. In a fee order issued in *Hernandez v. Medows*, No. 02-20964-CIV-GOLD/SIMONTON (S.D. Fla. Oct. 12, 2005) (Report and Recommendation), the Court stated, "Ms. Perkins is one of the top two or three Medicaid litigators in the country." A California federal district court, in 1994, found me and other Health Law Program counsel to be "highly experienced, well regarded litigators in the area of Medicaid benefits." *Sneede v. Coye*, 856 F. Supp. 526, 535 (N.D. Cal. 1994).

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true.  Signed this 21st day of October 2013, in Carrboro, N.C.

/s/ Jane Perkins
Jane Perkins, J.D., M.P.H.

Jane Perkins
313 Ironwoods Drive
Chapel Hill, NC  27516
(919) 968-6308 (Work)
(919) 968-8855 (Fax)

Admitted to State bars of California, Maryland (inactive), North Carolina

*EMPLOYMENT*

<u>National Health Law Program-Legal Director</u>, Chapel Hill, NC & Los Angeles, CA (November 1984 - present): Provide legal assistance to advocates, policy makers and clients on health access issues, involving Medicaid, maternal and child health, civil rights, and access to the courts; provide research and training on the above issues. Acting director: May-Sept. 1988.

> *Southeastern Regional Center of the Network for Public Health Law (NPHL), co-director*: Provide legal resources and assistance to build the field of public health law, focusing on health reform, maternal and child health, and issues arising in the Southeastern United States.

> *Previous:*

<u>University of North Carolina, Chapel Hill-School of Law</u>, Chapel Hill, NC (1993-1997): Adjunct Faculty, Health Law and Policy, Class and Seminar.

<u>University of North Carolina, Chapel Hill-School of Social Work</u>, Chapel Hill, NC (1993-2002):  Clinical Associate Professor, Health Policy.

<u>Assistant Attorney General, State of Maryland</u>, Baltimore, MD (March 1983-November 1984): Represented the department of health in administrative and judicial matters; drafted regulations; served as Counsel to the Governor's Task Force on Health Care Cost Containment; participated in the Attorney General's Health Care Task Force.

<u>Carpenter, Higgins & Simonds</u>; Burlingame, CA (January 1982-March 1983). Specialized in planning and litigation for not-for-profit hospitals; work included antitrust, Medi-Cal contracting, and medical staffing issues.

*EDUCATION*

> <u>Graduate</u>:    University of California School of Public Health, Berkeley, M.P.H., 1982

> <u>Honors</u>
> Graduate Honor Society

<u>Legal</u>:            University of North Carolina, Chapel Hill, J.D., l981

                     Honors
                        North Carolina Academy of Trial Lawyers Trial Advocacy
                        Award; Moot Court Best Brief Award

<u>Undergraduate</u>:        Davidson College, B.A. cum laude, Political Science, 1978

                    Honors/Activities
                        Constitutional Law Award; Editor, *Pre-Law Handbook*;
                        Honor Court Review Board

*SELECTED PUBLICATIONS*

Perkins, *Implications of the Supreme Court's ACA Medicaid Decision*, 41 <u>J. of Law, Med. & Ethics</u>, 77 (Spring 2013).

Perkins, *The Supreme Court's Affordable Care Act Decision on Medicaid Eligibility and the Aftermath*, 46 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 426 (Jan.-Feb. 2013).

Perkins, *Responding to Medicaid Service Cutbacks: An Advocate's Checklist*, 45 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 398 (Jan.-Feb. 2012).

Somers & Perkins, *Sunshine and Accountability: The Pursuit of Information on Quality in Medicaid Managed Care,* 5 <u>St. Louis U. J. of Health L. & Pol.</u> 153 (2011).

Perkins, Somers et al., *An Advocate's Guide to the Medicaid Program* (May 2011) (previous editions: June 2001, Nov. 1993, July 1991).

Perkins et al., *The U.S. Supreme Court's 2009 Term: Justice Steven's Last Round in the Access Battle*, 44 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 342 (Nov.-Dec. 2010).

Perkins et al., *The Supreme Court's 2006-2007 Term: The Shift to the Right Takes Shape*, 41 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 442 (Nov.-Dec. 2007).

Perkins et al., <u>Children's Health Under Medicaid: A National Review of Early and Periodic Screening, Diagnosis and Treatment</u> (May 2005) (previous editions: Sept. 2001, Aug. 1998).

Perkins, *Using Section 1983 to Enforce Federal Laws*, 38 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 720 (Mar.-Apr. 2005).

Perkins, *Medicaid Coverage of Emergency Medical Conditions,* 38 <u>Clearinghouse Rev. J. of Poverty L. & Pol.</u> 384 (Sept.-Oct. 2004).

Perkins, *Ensuring Linguistic Access in Health Care Settings: An Overview of Current*

*Jane Perkins -- Resume*

*Page 3*

*Legal Rights and Responsibilities* (Aug. 2003) (available from Kaiser Family Foundation).

Perkins & Somers, *Toward a Healthy Future: Medicaid EPSDT for Poor Children and Youth* (Apr. 2003) (available from NHeLP).

Perkins, *Medicaid EPSDT: A Source of Funding Early Intervention Services* (June 2002).

Perkins, *Race and Health*, 36 Clearinghouse Rev. J. of Poverty L. & Pol. 15-20 (May-June 2002).

Perkins, *Medicaid: Past Successes and Future Challenges*, 12 Health Matrix: J. of Law-Medicine 7 (Winter 2002).

Perkins & Somers, *Sandoval's Retrenchment on Civil Rights Enforcement: The Ultimate Sorcerer's Magic*, 35 Clearinghouse Rev. J. of Poverty L. & Pol. 433 (Nov.-Dec. 2001).

Perkins et al., *Beyond Bush v. Gore: Highlights from the Supreme Court's 2000-2001 Decisions*, 35 Clearinghouse Rev. J. of Poverty L. & Pol. 373 (Nov.-Dec. 2001).

Perkins & Boyle, *Addressing Long Waits for Home and Community-Based Care Through Medicaid and the ADA*, 45 St. Louis U. L. Rev. 117 (Winter 2001).

Perkins & Olson, Medicaid Managed Care and Due Process: The Law, Its Implementation, and Recommendations (two volumes) (Jan. 2001) (available from Center for Health Care Strategies).

Perkins, *Overcoming Language Barriers to Health Care*, 65 Popular Government 38 (Fall 1999).

Olson & Perkins, Recommendations for Making the Consumers' Voice Heard in Medicaid Managed Care: A Guide to Effective Consumer Involvement (Apr. 1999).

Perkins, *Maintaining Health Services for Children Amid Welfare Confusion: The Importance of Early and Periodic Screening, Diagnosis and Treatment*, 32 Clearinghouse Rev. J. of Poverty L. & Pol. 450 (Jan.-Feb. 1999).

Perkins et al., Ombudsprograms and Member Advocates: Consumer-Oriented Approaches to Problem-Solving in Medicaid Managed Care (Sept. 1998).

Perkins & Vera, *Legal Protections to Ensure Linguistically Appropriate Health Care*, 9 J.

*Jane Perkins -- Resume*

*Page 4*

of Health Care for the Poor and Uninsured S62 (Supp. 1998).

Perkins et al., Ensuring Linguistic Access in Health Care Settings: Legal Rights and Responsibilities (Jan. 1998) (available from The Kaiser Family Foundation).

Perkins et al., A Guide to Complaints, Grievances and Hearings Under Medicaid Managed Care (Jan. 1998) (available from Families USA).

English, Perkins & Wibbelsman, *Meeting the Health Care Needs of Adolescents in Managed Care: A Position Paper of the Society for Adolescent Medicine*, 22 J. Adol. Health 271 (1998).

Perkins, *Resolving Complaints in Medicaid Managed Care: The 'Brutal Need' for Consumer Protections*, 34 Nat'l Institute for Dispute Resolution Forum 25 (Dec. 1997).

Perkins & Olson, *An Advocate's Primer on Medicaid Managed Care Contracting*, 31 Clearinghouse Rev. 19 (May-June 1997).

Perkins et al., Making the Consumers' Voice Heard in Medicaid Managed Care: Increasing Participation, Protection and Satisfaction (Dec. 1996).

Perkins, *Enrollment, Education and Plan Use in Medicaid Managed Care Programs; Financing Issues in Medicaid Managed Care* in Medicaid Managed Care: An Advocate's Guide for Protecting Children (Ch. 3 and 4) (July 1996).

Perkins & Vera, *'No Hablo Ingles' — Ensuring Linguistically Appropriate Health Care*, 29 Clearinghouse Rev. 36-48 (May 1995).

Perkins & Rivera, *EPSDT and Managed Care: Do Plans Know What They are Getting Into?*, 28 Clearinghouse Rev. 1248-1260 (March 1995).

Perkins & Melden, *Section 1115 Medicaid Waivers: The Advocacy Challenge of a Lifetime*, 28 Clearinghouse Rev. 864-885 (Dec. l994).

Perkins & English, *Evaluating Health Reform Proposals in the Interest of Children and Adolescents*, 27 Clearinghouse Rev. 428-40 (Aug./Sept. 1993), reprinted in 12 A.B.A. Juv. & Child Welfare L. Rep. 188-91 (Feb. 1994) and 13 A.B.A. Juv. & Child Welfare L. Rep. 9-14 (March 1994).

Perkins, *Race Discrimination in America's Health Care System*, 27 Clearinghouse Rev. 389-97 (August 1992), reprinted in 51 Guild Practitioner 1-18 (Winter l993).

*Jane Perkins -- Resume*

*Page 5*

Perkins, *Battle Against Lead Poisoning Heats Up*, 5 <u>Indoor Pollution Law Report</u> 1-5 (February 1992).

Perkins, *Lead Poisoning Problems Challenged on Many Fronts*, 25 <u>Clearinghouse Rev.</u> 13-16 (May 1991).

Perkins et al., *That was Then, This is Now:  The Supreme Court's Eleventh Amendment Decisions*, 23 <u>Clearinghouse Rev.</u> 966-72 (Dec. 1989); <u>reprinted as</u> Chapter 6 in National Lawyers Guild, <u>Civil Rights Litigation and Attorney Fees Annual Handbook</u> (1990).

Perkins, *Increasing Provider Participation in the Medicaid Program:  Is There a Doctor in the House?*, 26 <u>Houston L. Rev.</u>77-107 (January 1989); <u>reprinted in</u> Bureau of National Affairs, <u>Specialty Law Digest: Health Care</u> (Oct. 1989).

Perkins, *Obtaining Information from HHS*, 22 <u>Clearinghouse Rev.</u> 1401-06 (April 1989).

Perkins & Dowell, *Tax Exemptions for Health Care Facilities:  Charity Care Enters the Picture*, 22 <u>Clearinghouse Rev.</u> 247-51 (July 1988).

Perkins & Waxman, *The COBRA Continuation Option:  Questions and Answers*, 21 <u>Clearinghouse Rev.</u> 1315-20 (April 1988).

Perkins, *Problems & Solutions for the Uninsured*, 9 <u>Whittier Law Review</u> 221-25 (1987).

Perkins, *ERISA Preemption Affecting Indigent Health Care Coverage*, 20 <u>Clearinghouse Rev.</u> 1506-11 (April 1987).

Perkins et al., *State-Based Financing of Indigent Health Care:  Promise and Problems*, 20 <u>Clearinghouse Rev.</u> 372-81 (Summer 1986).

Dorn, Dowell, & Perkins, *Anti-Discrimination Provisions and Health Care Access:  New Slants on Old Approaches*, 20 <u>Clearinghouse Rev.</u> 439-53 (Summer 1986).

Perkins and Waxman, *Hospital Financing in the 1980s*, 20 <u>Clearinghouse Rev.</u> 148-51 (June 1986).

Perkins & Boyle, *AIDS and Poverty:  Dual Barriers to Health Care*, 19 <u>Clearinghouse Rev.</u> 1283-91 (March 1986).

Perkins, *Effects of Health Care Cost Containment on the Poor:  An Overview,* 19

*Jane Perkins -- Resume*

*Page 6*

<u>Clearinghouse Rev.</u> 831-51 (December 1985).

*SELECTED CASES*

*K.C. v. Wos*, 716 F.3d 107(4th Cir. 2013), *aff'g*, 2013 U.S. Dist. LEXIS 43822 (E.D.N.C. Mar. 29, 2012) (granting preliminary injunction requiring Medicaid due process in managed care program)

*Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) (affirming preliminary injunction finding cuts to personal care services likely to violate Medicaid and Americans with Disabilities Acts)

*Wood v. Betlach & Sebelius*, 2013 WL 474369 (D. Ariz. Feb. 7, 2013) (finding federal approval of mandatory copayments as part of Medicaid demonstration project arbitrary and capricious)

*Davis v. Shah*, 2012 WL 1574944 (W.D. N.Y. May 3, 2012) (preliminary injunction requiring Medicaid coverage of orthotic shoes and compression stockings)

*Newton Nations v. Betlach*, 660 F.3d 370 (9th Cir. 2011), rev'g in part & aff'g in part, 2010 WL 1266827 (D. Ariz. Mar. 29, 2010), *same case*, 316 F.Supp.2d 883 (D. Ariz. 2004) (finding approval of Medicaid copayment demonstration project violated section 1115 of the Social Security Act)

*Hiltibran v. Levy*, 793 F. Supp. 2d 1108 (W.D. Mo. June 24, 2011) (permanently enjoining defendant's refusal to cover incontinence supplies in Medicaid/ADA case), *same case*, 2010 WL 6825306 (W.D. Mo. Dec 27, 2010) (preliminary injunction)

*McCartney v. Cansler*, 382 Fed. App'x 334 (4th Cir. 2010), *aff'g*, 608 F.Supp.2d 694 (E.D.N.C. 2009) (denying defendant's motion to dismiss Medicaid due process case)

*Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980 (S.D.Cal. 2010) (preliminarily enjoining cuts in in-home services in ADA/Medicaid case)

*DW v. Walker*, 2009 WL 1393818 (S.D.W.Va., May 15, 2009) (denying defendant's motion to dismiss Medicaid EPSDT case)

*Duffy v. Meconi*, 508 F.Supp.2d 399 (D. Del. 2007) (granting plaintiff summary judgment in a constitutional right to travel case involving Medicaid residency requirements)

*Jane Perkins -- Resume*

*Page 7*

*Salazar v. D.C.,* 596 F. Supp. 2d 67 (D.D.C. 2009) (requiring public disclosure of Medicaid-participating HMO coverage standards), *partial recon.,* 750 F. Supp. 2d 65 (D.D.C. 2010), *appeal dismissed*, 2011 WL 4919248 (D.C. Cir. Oct 14, 2011), *other case history*, 596 F. Supp. 2d 67 (D.D.C. 2009) (denying motion to terminate), *appeal dismissed*, 2011 WL 4919248 (D.C. Cir. Oct 14, 2011), *same case*, 570 F. Supp. 2d 105 (2008) (imposing sanctions), *aff'd in part & rev'd in part*, 602 F.3d 431 (D.C. Cir. 2010);1996 WL 768038 (D. D.C. Oct. 16, 1996); 938 F. Supp. 926 (1996), *same case*, *Wellington v. D.C.*, 851 F. Supp. 1 (D.D.C. l994) (requiring EPSDT for Medicaid-eligible children)

*Crabtree v. Goetz*, 2008 WL 5330506 (M.D. Tenn. Dec. 19, 2008) (preliminary injunction under ADA)

*Lankford v. Sherman*, 451 F.3d 496 (8th Cir. 2006) (Medicaid coverage of medical equipment and supplies)

*Edmonds v. Levine,* 417 F. Supp. 2d 1323 (S.D. Fla. 2006) (Medicaid coverage of outpatient prescription drugs)

*Cyrus v. Walker*, 409 F. Supp. 2d 748 (S.D.W.Va. 2005) (Medicaid due process in home and community based settings)

*Antrican v. Buell*, 290 F.3d 178 (4th Cir. 2002), *aff'g*, 158 Fed. Supp. 2d 663 (E.D.N.C. 2001), *cert. denied,* 537 U.S. 973 (2002) (allowing plaintiffs to proceed with Medicaid case, finding no Eleventh Amendment or section 1983 bars)

*Westside Mothers v. Olszewski*, 454 F.3d 542 (6th Cir. 2006), *aff'g in part, rev'g in part, & mod.*, 368 F.2d 740 (E.D. Mich. 2005), *same case,* 289 F.3d 852 (6th Cir. 2002), *rev'g in part & aff'g in part*, 133 F. Supp. 2d 549 (E.D. Mich. 2001), *cert. denied*, 537 U.S. 1045 (2002) (Medicaid EPSDT case, involving Eleventh Amendment and private enforcement challenges)

*Blue v. Bonta*, 99 Ca. App. 4th 980, 121 Cal. Rptr. 2d 483 (Cal. Ct. App. 2002) (requiring Medicaid coverage of stairway chairlifts for individuals with mobility impairments)

*Chisholm v. Hood*, 133 F. Supp. 2d 894 (E.D. La. 2001) (program to deliver behavioral and psychological services to autistic children violated Medicaid EPSDT statutes), *same case*, 110 F. Supp. 2d 499 (E.D. La. 2001) (limitation of occupation, speech and audiological therapy services to children violated Medicaid statute)

*Benjamin H v. Ohl*, 1999 U.S. Dist. LEXIS 22469 (S.D.W.Va. 1999) (preliminary

*Jane Perkins -- Resume*

*Page 8*

injunction requiring Medicaid agency to provide timely services to individuals with developmental disabilities who were waiting for home and community based care services)

*Sanders v. Lewis*, No. 2:92-0353 (S.D.W.Va.)(Order and Compliance Plan, March 1, l995) and (Summary Judgment, Aug. 16, l993), *reprinted at* CCH, <u>Medicare & Medicaid Guide</u> ¶ 43,120 (preventive care for children in out of home placement)

*Wolford v. Lewis*, 860 F. Supp. 1123 (S.D.W.Va. l994)(requires quality of care for Medicaid beneficiaries in residential and board and care homes, Medicaid transportation)

*Thompson v. Raiford*, No. 3:92-CV-1539-R (N.D.Tex. Sept. 23, l993), *reprinted at* CCH, <u>Medicare & Medicaid Guide</u> ¶ 41,776 (Medicaid coverage for lead blood testing for children)

*Clark v. Coye*, 967 F.2d 585 (9th Cir. 1992), *aff'g and remanding,* 758 F. Supp. 572 (E.D. Cal. 1990) (Medicaid dental provider participation)

*Matthews v. Coye*, No. C-90-3620-EFL (N.D. Cal.) (Stipulated Settlement, Oct. 30, 1991) (Medicaid EPSDT coverage for lead blood testing)

*Sneede v. Kizer*, 728 F. Supp. 1003 (N.D. Cal. 1990) *same case*, 856 F. Supp. 526 (l994) (Medicaid eligibility)

*Citizens Action League v. Kizer*, 670 F. Supp. 874 (N.D. Cal. 1987), *rev'd*, 887 F.2d 1003 (9th Cir. 1989) (Medicaid estate recovery)

*Stangler v. Sullivan*, 685 F. Supp. 1125 (W.D. Mo. 1988), *aff'd*, 878 F.2d 1069 (8th Cir. 1989), *cert. denied*, 110 S.Ct. 1782 (1990) (Medicaid eligibility)

*Frank v. Kizer*, 261 Cal. Rptr. 882 (Ct. App. 1989) (Medicaid notice and hearings)

*Jackson v. Stockdale*, 264 Cal. Rptr. 525 (Ct. App. 1989) (Medicaid dental services)

*HONORS*

North Carolina Defender of Justice Award (2009)
Reginald Heber Smith Award for Legal Representation of The Poor (1997)

*ADVISORY GROUPS*

*Jane Perkins -- Resume*

*Page 9*

CMS, EPSDT Workgroup (2010–2012) (co-chair of Behavioral Health Subgroup)

Institute of Medicine of the National Academies of Science, Committee on Oral Health Access to Services (2010-2011)

National Quality Forum, Child Health Outcomes Steering Committee (2010-2011)

Shriver Center, National Clearinghouse Review Journal of Poverty Law & Policy Editorial Steering Committee (2009-present)

Advisory Panel to Mathematica Policy Research, Using External Quality Review Organizations to Improve Quality of Services for Children (2004-2005)

North Carolina Latino Health Task Force (2002-2004)

Los Angeles County Department of Health Services Cultural and Linguistic Competency Standards Working Group (2001-2002)

North Carolina Legal Services Advocates for Children's Services Advisory Committee (1998-2004)

Poverty and Race Research Action Council, Board of Directors (1995-1999)

Health Care Financing Administration and National Academy for State Health Policy, Quality Improvement System in Managed Care (QISMC) Working Group (1998)

Case No. 12-13785-DD

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

K.G., by and through his next friend, ILIANA GARRIDO;
I.D., by and through his next friend, NILDA RIVERA; and
C.C., by and through his next friend, RACHELLE CRAWFORD,

Plaintiffs-Appellees,

vs.

ELIZABETH DUDEK, in her official capacity as Secretary, FLORIDA AGENCY
FOR HEALTH CARE ADMINISTRATION,

Defendant-Appellant.

On Appeal from the United States District Court
Southern District of Florida

## AFFIDAVIT OF MONICA VIGUES-PITAN IN SUPPORT OF
## PLAINTIFFS'/APPELLEES' MOTION FOR ATTORNEYS' FEES

BEFORE ME, the undersigned authority, personally appeared Monica Vigues-Pitan, who, being first duly sworn, deposes and says:

1. I am an Advocacy Director for Legal Services of Greater Miami, Inc.'s Health and Income Maintenance Unit. I have personal knowledge of the facts stated in the affidavit as true. This affidavit is being used in support of Appellee's Application for Attorneys' Fees related to this appeal.

2. I am co-counsel for Plaintiffs/Appellees in this case. I am an adult and competent to testify.

3.  I have been employed as an attorney at Legal Services of Greater Miami, Inc. since September 2003 and as an Advocacy Directory since November 2006.

4.  I was admitted to the Florida Bar in September 2003.  I am authorized to practice law in all Florida state courts, as well as the United States District Court for the Southern District of Florida and the United States Circuit Court of Appeals for the Eleventh Circuit.

5.  I received my J.D. from the University of Miami School of Law in 2003 and my Undergraduate Degree from the University of Miami in 2000.

6.  Since 2003, I have represented clients in the areas of public benefits entitlement and immigration.  My public benefits cases have included representing clients in Medicaid, unemployment compensation, Social Security disability, food stamps, and cash assistance in administrative hearings, state appellate courts and federal court.  My resume, attached as Attachment A, further describes my professional experience.

7.  Since November 2006, I have supervised several attorneys in different substantive areas of the law and directed all the health related advocacy for Legal Services of Greater Miami, Inc.

8.  I have supervised attorneys on dozens of Medicaid cases.

9. I was co-counsel in the Medicaid civil rights case of *Smith v. Benson*, which challenged the Florida Agency for Healthcare Administration's denial of Medicaid coverage for medically necessary diapers for children under 21, 703 F. Supp. 2d 1262 (S.D.Fla., 2010) (entering Final Summary Judgment for the Plaintiffs and finding the state's rule excluding diapers violated the federal Medicaid statute's Early Periodic Screening Diagnosis and Treatment requirement).

10. I worked closely with co-counsel meeting to discuss strategy for mediation and offers of settlement. I also kept our clients informed about the case status, offers of settlement and prepared them for mediation.

11. For Appellees' Brief, I conducted legal research on a variety of issues connected to our brief as well as analyzing cases in Defendant's brief. I also provided analysis and editing.

12. I was responsible for scheduling and arranging a series of moot courts and worked closely with lead counsel on these. I also arranged for a pro bono meeting with a retired Eleventh Circuit Court Judge to discuss strategy for oral argument.

13. Attached to this Declaration is my resume. Also included as part of Plaintiffs' Composite Exhibit A is a summary of the work I performed with attached time records that reflect professional services rendered in this civil

rights appeal through October 22, 2013.  I kept contemporaneous billing records, and these billing records represent an accurate account of the time for which I am seeking fees.  All entries of time expended, dates and work performed are those I personally made.  Also enumerated in my time records are services for which I have not charged.

14. In compiling my time, I have used billing judgment.  I am not billing for time or service that I determined to be duplicative, excessive, redundant, non-compensable, or which I otherwise properly excluded in the exercise of billing judgment.  This non-billed time is also enumerated in these billing records.

15. I am requesting an hourly rate of $360.  This rate is well within the market rate in Miami for attorneys with commensurate experience.  *See* D.E. 136, Ex. 8.

FURTHER AFFIANT SAYETH NOT.

Monica Vigues-Pitan, Esq.

STATE OF FLORIDA

COUNTY OF MIAMI-DADE COUNTY

The foregoing was sworn to me before this 24 day of October 2013 by Monica Vigues-Pitan.  Such person did take an oath and (notary must check applicable box):

Is personally known to me.
Produced a current Florida driver's license.
Produced _____ as identification.

{Notary Seal must be affixed}

NOTARY PUBLIC-STATE OF FLORIDA
Cecilia L. Vignoli
Commission #DD994223
Expires:   MAY 20, 2014
BONDED THRU ATLANTIC BONDING CO., INC.

_____
Signature of Notary

Cecilia Vignoli

_____
Name of Notary

Commission Number _DD994223_

My commission expires _May 20, 2014_

# MONICA VIGUES-PITAN

10295 SW 77th Court • Miami, Florida 33156 • 786.280.8835 • MViguesPitan@lsgmi.org

## EXPERIENCE

**LEGAL SERVICES OF GREATER MIAMI, INC., Miami, Florida**
*Advocacy Director of the Health and Income Maintenance Unit*        *November  2006 - Present*
- Represent low-income clients in government benefits cases with an emphasis on meaningful health care access for children
- Represent clients in both administrative hearings and affirmative federal court litigation
- Supervise attorney and paralegal staff.
- Supervise several substantive advocacy projects serving the homeless, transitioning foster youth, HIV positive and disabled populations.

*Project Director of the Homeless Legal Assistance Project*        *August 2004 - October 2006*
- Conducted community education at homeless shelters.
- Completed off-site intake at homeless shelters.
- Coordinated with other homeless service providers to render holistic services to homeless clients.

*Attorney*        *August 2003 - Present*
- Represent low-income client whose benefits; including cash assistance, food stamps, Medicaid, unemployment compensation, and/or disability, have been reduced, denied or terminated.
- Represent clients at the appellate level in both state and federal courts.

## PROFESSIONAL MEMBERSHIPS AND AWARDS

- New Leaders Council 40 under 40 Advocacy Award, 2013
- Florida Trend's Legal Elite, 2012
- Recipient of Daily Business Review's Most Effective Public Interest Lawyer Award, 2010
- Active member of the Florida Bar
- Admitted to practice in U.S. Southern District of Florida & U.S. Court of Appeals, Eleventh Circuit
- Cuban American Bar Association, Member

## COMMUNITY INVOLVEMENT

- Miami Coalition for the Homeless, President of the Board of Directors
- Miami Fellow Alumni for the Miami Foundation

## EDUCATION

**UNIVERSITY OF MIAMI SCHOOL OF LAW**, Coral Gables, Florida
Juris Doctorate May 2003
**Honors:**        Dean's List
                Minority Participation in Legal Education Scholarship & Dean's Scholarship Recipient
                Center for Ethics & Public Service, Hon. William Hoevler Fellow

**UNIVERSITY OF MIAMI**, Coral Gables, Florida
Bachelor of Arts, Cum Laude, May 2000

**OXFORD UNIVERSITY**, Oxford, UK
History & Politics Program, Summer 1999

## LANGUAGE

- Fluent in Spanish

Case No. 12-13785-DD

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

K.G., by and through his next friend, ILIANA GARRIDO;
I.D., by and through his next friend, NILDA RIVERA; and
C.C., by and through his next friend, RACHELLE CRAWFORD,

Plaintiffs-Appellees,

vs.

ELIZABETH DUDEK, in her official capacity as Secretary, FLORIDA AGENCY
FOR HEALTH CARE ADMINISTRATION,

Defendant-Appellant.

On Appeal from the United States District Court
Southern District of Florida

## DECLARATION OF BETSY HAVENS IN SUPPORT OF
## PLAINTIFFS'/APPELLEES' MOTION FOR ATTORNEYS' FEES

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I, Betsy Havens, hereby declare under penalty of perjury:

1.      I am co-counsel for Plaintiffs/Appellees in this appeal.  I am an adult

and competent to testify.

2.      During the relevant time I am billing for, I was an attorney and Equal

Justice Works fellow sponsored by the Florida Bar Foundation and Greenberg

Traurig and hosted by Florida Legal Services, Inc. ("FLS"). I was awarded the Equal Justice Works fellowship to establish the Children's Medicaid Rights Project which I developed.  This project addresses systemic barriers that impact access to health care for low-income children living in Miami-Dade County.  My fellowship, which began in September 2011 and ended September 2013, was with Florida Legal Services, Inc., a non-profit organization representing low-income Floridians on a variety of issues including access to health care.

3.      I received my Master's degree in Public Health from the University of North Carolina in 2006 and graduated *magna cum laude* from the University of Miami School of Law in 2011.  I have published two public health research articles in peer-reviewed journals and was selected to present my research at two national American Public Health Association conferences.  Following my Master's degree, I worked at the Florida Agency for Health Care Administration as a Utilization Management Specialist in the area of Community Behavioral Health.

4.      While in law school, I was recognized as the Most Outstanding Articles & Comments Editor on the INTERAMERICAN LAW REVIEW and was a regional Moot Court champion for the American Bar Association's National Appellate Advocacy Competition.   I am admitted to practice in Florida, the Southern District of Florida, and the Eleventh Circuit Court of Appeals.  Attached

to this declaration is a copy of my resume which explains in greater detail my experience.

5.      I worked closely with lead counsel in settlement discussion and in preparation of Plaintiffs'/Appelees' brief and oral argument.

6.      On the Plaintiffs'/Appellees' main brief, I researched equitable estoppel, judicial estoppel, waiver, invited error issues, and affirmative injunctive relief. I edited Appellee's brief in various sections, including the statement of the case, the injunction to nonparties, and the declaratory judgment section. I also worked on research in regard to AHCA's medical necessity argument and whether, as an uncontested issue, AHCA was merely seeking an advisory opinion.  I am not billing for this time or other time spent on responding to AHCA's individual medical necessity argument, including research on how appellate courts interpret orders in compliance with governing law.

7.       I reviewed cases and researched issues related to the new arguments in AHCA's reply brief.

8.      I worked on oral argument moot court with lead counsel and co-counsel by assisting with argument preparation, asking questions as on a judicial panel, and preparing a moot of defendant/appellant's argument.  I also helped to make substantive edits to lead counsel's oral argument outline and strategized about argument.

9.      Included in Plaintiffs' Composite Exhibit A is a summary of the work I performed on this appeal and attached to that are the time records that reflect professional services rendered in this civil rights appeal.  I kept contemporaneous billing records, and these billing records represent an accurate account of the time for which I am seeking fees.  All entries of time expended, dates and work performed are those I personally made.  Also enumerated are services for which I have not charged.

10.      In compiling my time, I have used billing judgment.  I am not billing for time or service that I determined to be duplicative, excessive, redundant, non-compensable, or which I otherwise properly excluded in the exercise of billing judgment.

11.      I am requesting an hourly rate of $275.  This rate is based on the billing rates used for attorneys with 1-3 years of experience in Miami.  This rate is in the middle of the prevailing market range for lawyers of comparable skill and experience. *See* D.E. 136, Ex. 8.

12.      I did not bill for nearly 70% of the time I spent working on this appeal.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.  Signed this 23 day of October, 2013 in Los Angeles, California.

/s/ Betsy E. Havens
Betsy E. Havens

# BETSY E. HAVENS

1226 Drexel Avenue • Miami Beach, Florida • 305-766-4389 • betsyhavens@gmail.com

## EDUCATION

**UNIVERSITY OF MIAMI SCHOOL OF LAW**, Juris Doctor, *magna cum laude*, May 2011

Law Review: *Inter-American Law Review*, Staff Editor, 2009 – 2010, Articles and Comments Editor, 2010 – 2011

Honors: Dean's List (4 semesters); Dean's Awards in Property, Administrative Law and Civil Procedure II; Moot Court Board, 2009 – 2011: Regional Champions of the 2010 ABA's National Appellate Advocacy Competition; *Inter-American Law Review* 2011 Most Outstanding Articles & Comments Editor; Miami Public Interest Scholar; Center for Ethics & Public Service Fellow; HOPE Fellow

Activities: Public Interest Leadership Board, 2008 – 2011; Public Interest Lecture Series Coordinator, 2009 – 2011; Health Law Clinic, 2008 – 2010; Financial Literacy for Foster Youth, 2009

**UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL**, Master of Public Health in Health Behavior & Education, Aug. 2006

Thesis: Dismantling Racism to Eliminate Inequities in Healthcare: A Case Study on Power and Participation in a County Health Department

Activities: Student Health Action Coalition, 2004 – 2006: Clinic Administrator and Public Health Counselor; Minority Health Conference, 2005 – 2006: Planning Committee and Moderator

**UNIVERSITY OF MICHIGAN**, Bachelor of Arts in English Language & Literature and Women's Studies, May 2003

Activities: Prison Creative Arts Program Facilitator, 2001 – 2003; HIV/AIDS Educator and Lay Health Educator Trainer, South Africa, 2000; Domestic Violence Counselor and Shelter Supervisor, 1998 – 2000

## EXPERIENCE

**DISABILITY RIGHTS CALIFORNIA** Los Angeles, CA

*Staff Attorney*, October 2013 – Present

Help lead impact litigation to protect and advance the rights of people with disabilities, particularly related to health care access. Supervise advocates performing direct client intake.

**FLORIDA LEGAL SERVICES, INC.** Miami, FL

*Equal Justice Works Fellow/ Attorney at Law*, Sept. 2011 – Sept. 2013

*Law Clerk*, May 2009 – May 2010, August 2010 – April 2011

Address systemic barriers to health care for low-income Floridians through impact litigation, legislative and administrative advocacy, direct representation, and community education.

- Serve as co-counsel on *K.G. ex rel. Garrido v. Dudek* (Southern District of Florida; Eleventh Circuit Court of Appeals). Successfully challenged Agency for Health Care Administration's ("AHCA") policy excluding coverage of behavioral health services for treatment of children with autism as a violation of EPSDT. Assisted in researching, editing, and drafting lower court and Appellate briefs and motions. Helped with trial preparation. Led direct examination of expert on scientific evidence of efficacy of Applied Behavior Analysis ("ABA") in treating autism. Assist with appellate argument preparation. (Appeal pending.)

- Help lead Medicaid Expansion efforts statewide and locally. Build state coalition with over 28 organizations to develop and implement legislative and community strategy around Medicaid Expansion and Affordable Care Act ("ACA"). Lobby state legislature. Testify before legislative committees. Plan town halls and events.

- Train community leaders, legal services attorneys, and law students on health care access. Develop "Know Your Rights" materials related to ABA, dental access, ACA, and coverage options.

- Served as lead counsel on Medicaid fair hearing resulting in Medicaid coverage of orthodontia.

- Clerked on *Smith v. Benson* (Southern District of Florida), an EPSDT case requiring AHCA to cover diapers for medically incontinent disabled youth. Assisted with legal research and editing briefs and motions.

**THE NATIONAL HEALTH LAW PROGRAM**, Chapel Hill, NC

*Law Clerk*, May 2010 – August 2010

Assisted with Medicaid impact litigation and health policy advocacy under Legal Director Jane Perkins. Analyzed efforts regarding Health Care Reform, EPSDT, and Medicaid. Assisted with drafting amicus brief representing Disability Rights of

North Carolina. Performed legal research and analysis for issue briefs, presentations, litigation, and publications including *An Advocate's Guide to the Medicaid Program*.

**AGENCY FOR HEALTH CARE ADMINISTRATION**, Miami, FL
*Utilization Management Specialist*, January 2007 – August 2008
Monitored Community Behavioral Health providers in Miami-Dade County to ensure compliance with Florida Medicaid policy. Led on-site reviews of clinical records, policies and procedures, and personnel records. Interviewed staff and patients. Participated in on-site reviews of Medicaid Managed Care Organizations. Provided oral and written reports.

**CHATHAM COUNTY PUBLIC HEALTH DEPARTMENT**, Pittsboro, NC
*Principal Investigator*, April 2005 – July 2006
Developed and performed an evaluation of staff participation in health department's Dismantling Racism program. Interviewed employees and leaders. Analyzed transcribed data. Presented findings. Used data for thesis and publications.

**ENGAGED INSTITUTIONS**, Chapel Hill, NC
*Research Assistant*, June 2006 – June 2007
Helped lead a task force with over 50 deans, program directors, and community members to advance UNC School of Public Health infrastructure to enable more community engagement and scholarship related to racial and ethnic disparities.

**PROJECT SELF (SMOKING, EDUCATION, LIFESTYLE, AND FITNESS) IMPROVEMENT**, Raleigh, NC
*Research Assistant*, October 2004 – July 2006

**WOMANSCHOICE**, Ann Arbor, MI
*Women's Health Counselor*, September 2003 – June 2004

## PUBLICATIONS

Betsy E. Havens, Michael A. Yonas, Mondi Mason, Eugenia Eng & Vanessa Jeffries, *Eliminating Inequities in Healthcare: Understanding Perceptions and Participation in an Organizational Anti-Racism Initiative*, 12 HEALTH PROMOTION PRACTICE 6 (Feb. 2011).

Derek M. Griffith, Michael Yonas, Mondi Mason & Betsy E. Havens, *Considering Organizational Factors in Addressing Health Care Disparities: Two Case Examples*, 11 HEALTH PROMOTION PRACTICE 3 (May 2010).

## PRESENTATIONS

**SERGEANT SHRIVER NATIONAL CENTER ON POVERTY LAW**, Chicago, IL
*Webinar Panelist:* Convincing States to Adopt the New Medicaid Eligibility Category, Oct. 2012

**NATIONAL LEGAL AID AND DEFENDER ASSOCIATION LITIGATION AND ADVOCACY DIRECTORS MEETING**, Austin, TX
*Panelist: K.G. v. Dudek:* Requiring Florida Medicaid to cover Applied Behavior Analysis for Children with Autism Spectrum Disorders, July 2012

**AMERICAN PUBLIC HEALTH ASSOCIATION ANNUAL MEETING & EXPOSITION**, Denver, CO
*Oral Presentation*: Health Care Policy to Eliminate Racial and Ethnic Disparities in the United States: What Canada Can Offer and Why It Is Not Enough, Nov. 2010

**AMERICAN PUBLIC HEALTH ASSOCIATION ANNUAL MEETING & EXPOSITION**, Boston, MA
*Roundtable Discussion*: Examining Power, Empowerment, and Participation within an Evaluation of a Workplace Dismantling Racism Process, Nov. 2006
*Oral Presentation*: Intergenerational Assets: A Participatory Approach to Developing a Sense of Community, Nov. 2006
*Poster Presentation*: An Evaluation of a Dismantling Racism Process at a County Health Department, Nov. 2006

## PROFESSIONAL MEMBERSHIP

**FLORIDA BAR**, Member, Sept. 2011 – present; **NATIONAL LAWYERS GUILD**, Member, Dec. 2012 – present; **AMERICAN PUBLIC HEALTH ASSOCIATION**, Member, Oct. 2006 – Nov. 2007, Oct. 2010- Nov. 2011

Case No. 12-13785-DD

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

K.G., by and through his next friend, ILIANA GARRIDO;
I.D., by and through his next friend, NILDA RIVERA; and
C.C., by and through his next friend, RACHELLE CRAWFORD,

Plaintiffs-Appellees,

vs.

ELIZABETH DUDEK, in her official capacity as Secretary, FLORIDA AGENCY
FOR HEALTH CARE ADMINISTRATION,

Defendant-Appellant.

---

On Appeal from the United States District Court
Southern District of Florida

---

## AFFIDAVIT OF MARGARET KOSYK IN SUPPORT OF
## PLAINTIFFS'/APPELLEES' MOTION FOR ATTORNEYS' FEES

---

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

BEFORE ME, the undersigned authority, personally appeared Margaret
Kosyk, Esq., who first being duly sworn, deposes and says:

1.      I am counsel for Plaintiffs'/Appellees' (Plaintiffs) fee application in
this appeal.  I am an adult and competent to testify.  All the statements contained in

this Affidavit and in this Application for Attorneys' Fees are truthful and within my personal knowledge.

2.     I am an admitted Florida attorney and began working with Florida Legal Services in my final semester at Florida International University (FIU) College of Law in early 2013. I was an Article Editor for the *FIU Law Review* and received the CALI Excellence for the Future Award in Health Law. I have been working at Florida Legal services on a variety of Medicaid related litigation assignments.

3.     I worked closely with lead counsel in preparing the Application for Appellate Attorneys' Fees. I researched cases on attorney's fees under 42 U.S.C. § 1988 and 11th Cir. R. 39-2, including cases defining "prevailing party" and the "legal relationship" test. I also researched cases on what is deemed a reasonable attorney's fee and the loadstar calculation. I carefully reviewed all attorneys' affidavits and declarations. In addition, I reviewed and organized the all attorneys' time sheets to reflect the categorical requirements in the Eleventh Circuit's form to accompany attorney's fees.

4.     Included in Plaintiffs' Composite Exhibit A is a summary of the work I performed on this appeal and attached to that are the time records that reflect professional services rendered. I kept contemporaneous billing records, and these billing records represent an accurate account of the time for which I am seeking

fees.  All entries of time expended, dates and work performed are those I personally made.  Also enumerated are services for which I have not charged.

5.      In compiling my time, I have used billing judgment.  I am not billing for time or service that I determined to be duplicative, excessive, redundant, non-compensable, or which I otherwise properly excluded in the exercise of billing judgment.  I did not bill for over 50% of the time I spent working on this Application.

6.      I am requesting an hourly rate of $200.  This rate is based on the billing rates used for attorneys with 1-3 years of experience in Miami.  As I was just admitted to practice law in Florida, this rate is in the lowest end of the prevailing market range for lawyers of comparable skill and experience. *See* D.E. 136, Ex. 8.

FURTHER AFFIANT SAYETH NOT.

_____

Margaret Kosyk, Esq.

STATE OF FLORIDA

COUNTY OF MIAMI-DADE COUNTY


The foregoing was sworn to me before this 24 day of October 2013 by

Margaret Kosyk.  Such person did take an oath and (notary must check applicable

box):

☐ Is personally known to me.

☑ Produced a current Florida driver's license.

☐ Produced _____ as identification.


{Notary Seal must be affixed}

_____
Signature of Notary

ERIKA M. ALONSO
MY COMMISSION # EE872161
EXPIRES February 06, 2017
(407) 398-0153   FloridaNotaryService.com

_____
Name of Notary

Commission Number EE872161

My commission expires 2/6/2017

## MARGARET KOSYK

335 S. Biscayne Blvd**.,** Apt. 4000 • Miami, FL 33131
margaretkosyk@gmail.com • 305-726-5773

### EDUCATION

**Florida International University College of Law**, Miami, Florida
**Degree**: Juris Doctor, May 2013
**Law Review***: FIU Law Review*, Article Editor
          Comment – "Approaches to Health Insurance Exchanges under PPACA"
**Honors**:     Dean's List: Fall 2011, Spring 2012
          CALI Excellence for the Future Awards: Health Law, Medical Malpractice

**Auburn University**, Auburn, Alabama
**Degree**: Bachelor of Industrial Design
**GPA** 3.34

### EXPERIENCE

**Florida Legal Services**, Miami, Florida
*Attorney at Law,* September 30 - present
     Assist counsel on Medicaid appeal, specifically draft application for attorney's fees. Work on enrollment challenges in Health Insurance Marketplace, including potential denials and appeals.
*Consultant*, August 28, 2013 – September 27, 2013
     Supported counsel on Medicaid appeal by preparing lead attorney for oral argument. Assisted in advanced training on Health Insurance Marketplace.
*Legal Intern*, Spring, 2013
     Assisted counsel for a Medicaid appeal in U.S. Eleventh Circuit Court of Appeals by conducting research, editing, motions and preparing for oral argument.

**Eleventh Judicial Circuit Court,** Miami, Florida
*Judicial Intern  to Honorable Ellen L. Leesfield*, Summer - Fall 2012
     Conducted research and drafted memoranda of law to prepare the judge for cases in the Civil Division of the Eleventh Judicial Circuit of Florida. Observed the courtroom for trials and hearings such as the foreclosure calendar.  Co-wrote research paper on admission of expert scientific testimony in Florida courts.

**FIU Health Law and Policy Clinic**, Miami, Florida
*Student Attorney*, Fall 2011 – Spring 2012
     Assisted low income clients in four of Miami's medically underserved neighborhoods to gain access to benefits and health care. Worked with medical students and professionals to assess client's condition. Engaged in policy project for state legislation on medical home under ACA.

### BAR ADMISSION

Admitted to practice law in Florida.