**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 11-20684-CIV-LENARD/GOODMAN**

K.G., *et al.*,

      Plaintiffs,

vs.

ELIZABETH DUDEK,
Secretary of the Florida Agency for
Health Care Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON PLAINTIFFS' APPLICATION FOR**
**APPELLATE ATTORNEYS' FEES**

United States District Judge Joan A. Lenard referred [ECF. No. 207] to the

Undersigned the Application of K.G., I.D. and C.C. (collectively "Plaintiffs") for

Appellate Attorneys' Fees against Defendant, Elizabeth Dudek, Secretary of the Florida

Agency for Health Care Administration (Defendant referred to throughout as

"AHCA"), [ECF No. 202].   The Undersigned reviewed the application, AHCA's

response, Plaintiffs' reply and the pertinent portions of the record.   For the reasons

given below, the Undersigned **respectfully recommends** that Plaintiffs' Motion be

**GRANTED IN PART**.   Specifically, the Undersigned recommends the District Court

enter an award in the amount of **$209,999** to Plaintiffs, which is $58,891 less than the

$268,890[1] requested.   As outlined below, the Court is reducing the award from the amount requested because the hourly rates are slightly high and because the attorneys did not consistently bill efficiently, leading to a 15% across-the-board reduction.

## I.   BACKGROUND

Plaintiffs are three children afflicted with autism spectrum disorders ("ASD") who depend on Medicaid for coverage of their treatment. *Garrido v. Dudek*, 731 F.3d 1152, 1155 (11th Cir. 2013).   All three children were prescribed applied behavioral analysis ("ABA") by their physicians after receiving "early and periodic screening, diagnostic, and treatment services" ("EPSDT"). *Id.*  AHCA had a policy at the time of Plaintiffs' diagnosis that deemed ABA as an experimental and unnecessary treatment for ASD (for *any* patient). *Id.* at 1155-1156.   In accordance with this policy, AHCA denied Plaintiffs' requests for Medicaid coverage of the prescribed ABA treatment. *Id.* Under the Medicaid Act, when ASD is discovered during EPSDT screenings, AHCA is required to "provide any treatment 'necessary' 'to correct or ameliorate' those conditions, whether or not the treatment is covered by the state's plan." *Id.* (quoting 42 U.S.C. § 1396d(r)(5)).

Plaintiff K.G., through his next friend, Iliana Garrido, commenced this action under 42 U.S.C. § 1983 against AHCA on February 28, 2011 [ECF No. 1], while the other

---

[1]      The Undersigned notes that Plaintiffs' initial request for fees was for $271,770 [ECF No. 209], but that figure was reduced in Plaintiffs' Reply [ECF Nos. 213; 213-5] in response to AHCA's objections [ECF No. 210] to time spent on "amicus brief, court admission, and medical necessity argument," [ECF Nos. 213; 213-5].

two plaintiffs were added in the First Amended Complaint on September 12, 2011 [ECF No. 63]. Plaintiffs argued that the denial of ABA treatment violated the Medicaid Act's EPSDT provision requiring AHCA to cover necessary treatments for ASD discovered during EPSDT examinations and also violated the Medicaid Act's comparability requirement provision, which ensures equitable treatment of beneficiaries. [*Id*.]. Plaintiffs prevailed at trial, resulting in the Honorable Joan A. Lenard of the U.S. District Court for the Southern District of Florida (the "District Court") entering an order stating that "ABA is 'medically necessary' and is not 'experimental' as defined under Florida administrative and federal law," and "that the determination by AHCA that ABA is experimental was arbitrary, capricious and unreasonable both in its process and conclusion." *K.G. ex rel. Garrido*, 864 F. Supp. 2d 1314, 1320-1322 (S.D. Fla. 2012).

Further, the District Court issued a permanent injunction that, among other measures, enjoined AHCA from enforcing the rule in its handbook barring coverage of ABA for ASD, and ordered AHCA to "provide, fund, and authorize Applied Behavioral Analysis treatment for Plaintiffs K.G., I.D., and C.C., as well as to all Medicaid-eligible persons under the age of 21 in Florida who have been diagnosed with autism or Autism Spectrum Disorder, as prescribed by a physician or other licensed practitioner." *Id.* at 1327-1328.

On November 16, 2012, AHCA appealed the District Court's ruling to The United States Court of Appeals for the 11th Circuit (the "Court of Appeals"). [ECF No.

213-1].   In its initial appellate brief, AHCA described its three issues on appeal as follows:

I. Whether the district court abused its discretion in ordering Florida's Medicaid administrator to authorize and provide specific treatments to all autistic Medicaid recipients under twenty-one with a prescription for such treatment, without permitting the State to make individualized medical-necessity determinations.

II. Whether the district court abused its discretion in ordering injunctive relief to nonparties, when such relief was effectively class-wide relief with no certified class, and when such relief was not necessary to provide complete relief to Plaintiffs.

III. Whether the district court abused its discretion in entering verbatim Plaintiffs' proposed order for declaratory relief, which purports to provide relief to nonparties.

[ECF No. 213-1, p. 14].

The Court of Appeals ultimately affirmed the District Court in part, but also reversed and remanded in part for modification of the injunction and declaratory judgment.[2] *Garrido*, 731 F.3d at 1161.  The particulars of what was affirmed, what was

---

[2]      The Court of Appeals summarized its ruling as follows: "In sum, the district court did not abuse its discretion in issuing a permanent injunction that overrules AHCA's determination that ABA is experimental (and AHCA's larger determination that ABA is never medically necessary) and requires Medicaid coverage of this treatment. And it is apparent that the district court is enforcing the injunction in that manner. However, because the language in the injunction's final section is out of step with the district court's analysis and what was actually decided, we vacate the

vacated and remanded, and what the ultimate consequences of those rulings were, are issues which will be analyzed below in the section which identifies the prevailing party in the Court of Appeals.

The instant action arose when the Court of Appeals remanded Plaintiffs' "Application for Appellant Attorneys' Fees" to the District Court "for a determination of Appellees' entitlement to appellate attorney's fees pursuant to 42 U.S.C. § 1988, and the reasonable amounts of appellate attorney's fees, if any, to be awarded." [ECF No. 202]. The District Court then referred the matter to the Undersigned for a report and recommendations concerning the Appellees' (herein referred to as "Plaintiffs") entitlement to fees from Appellant (herein referred to as "AHCA"). [ECF No. 207]. The Undersigned ordered the parties to file memoranda in support of their respective positions. [ECF No. 208]. Plaintiffs filed an Application for Appellate Attorneys' Fees [ECF No. 209] seeking $271,770 in fees (subsequently reduced to a request for $268,890). [*Id.*]. AHCA opposes Plaintiffs' application [ECF No. 210] and Plaintiffs filed a Reply [ECF Nos. 210; 213].

## II.    DISCUSSION

The appellate attorneys' fees request is ultimately governed by the Civil Rights Attorney's Fees Act, which states in relevant part: "In any action or proceeding to

---

injunction in part and remand to the district court to modify[.] . . . For the same reasons described above, we vacate in part and remand the declaratory judgment[.]" *Garrido*, 731 F.3d at 1160.

enforce a provision of section[] . . . 1983 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b).  This statute provides for recovery for the prevailing party at both the trial level and the appellate level. *Hanrahan v. Hampton*, 446 U.S. 754, 757 (1980).

Fees will be awarded under 42 U.S.C. § 1988 only to a "prevailing party," which, on appeal, may be the "prevailing plaintiff successfully defending an attack on the award in his favor[.]" *Fewquay v. Page*, 907 F.2d 1046 (11th Cir. 1990); *see also Ustrak v. Fairman*, 851 F.2d 983 (7th Cir. 1988) ("[W]hen the defendant appeals and the plaintiff incurs expenses in defending against the appeal that are reasonable even though they are not crowned **complete** success, ordinarily he **should** be entitled to reimbursement of those fees; he had **no choice but to incur them** or forfeit his victory in the district court.") (emphasis supplied).

### A.  Prevailing Party Status

AHCA contests Plaintiffs' claim that they were the prevailing party in the Court of Appeals. [ECF No. 210, pp. 2-4].  AHCA argues that Plaintiffs did not prevail on any legal issue before the Court of Appeals, nor did they receive any additional relief from that Court. [ECF No. 210, p. 2].  This argument is not well taken.

AHCA's contention is centered on what it perceives to be the scope of the issues on appeal.  According to AHCA, the Court of Appeals considered only a single issue on

appeal: "the district court enter[ing] an injunction that impermissibly provides that all autistic Medicaid recipients under the age of 21 with a prescription for ABA are automatically entitled to ABA treatment, regardless of medical necessity of ABA treatment in any individual case[,] . . . [which] . . . interferes with Florida's policy decision to limit Medicaid coverage to medically necessary services, and . . . deprives AHCA of its statutory responsibility to assess responsibility to assess the medical necessity of prescribed services in individual cases[.]" [ECF No. 210, p. 2 (quoting *Garrido*, 731 F.3d at 1158)].   Ultimately, the Court of Appeals did issue an opinion that replaced specific language in the District Court's permanent injunction and declaratory judgment to clarify that AHCA could still use a case-by-case assessment when determining whether ABA treatment would be provided.

The appellate opinion  focused primarily on whether the District Court's declaratory judgment and permanent injunction had the effect of not only eliminating AHCA's policy of categorically denying coverage of ABA treatment (while specifically granting Plaintiffs access to such treatment), but also "made a wholesale determination that ABA is **always** medically necessary to treat a Medicaid-eligible minor's ASD." *Garrido*, 731 F.3d at 1160. (emphasis added).   The Court of Appeals noted that the District Court's language was broad and *could* be interpreted so as to remove from AHCA the authority to decide on medical necessity (a power granted to the agency by the Medicaid Act itself) for coverage of medical treatments. *Id.* at 1159.

In response to this theoretically possible interpretation, though, the Court of Appeals looked into the context of the case and the rest of the ruling, and ultimately found that the District Court had no intent to remove the statutorily granted authority to decide medical necessity.[3]  *Id.* at 1159-1160.  In fact, the District Court had *already* rejected motions for contempt filed against AHCA on behalf of parties precluded from coverage of ABA treatment who erroneously were under the impression that the ruling had deemed the treatment **always** medically necessary. *Id.* at 1160.

Further, this less-extreme interpretation of the District Court's ruling (that it did not have the effect of eliminating AHCA's discretion to determine medical necessity on a case-by-case basis) was one that was advocated by the Plaintiffs themselves on appeal. [ECF No. 213-3, p. 24 ("First, AHCA contends that the district court improperly enjoined it from making individual medical necessity determinations for Medicaid-eligible children. This is not at all what the court ordered. It is beyond dispute that Medicaid law and controlling precedent require that covered prescribed services be medically necessary for the individual patient and that the state Medicaid agency plays a role in that determination.") (internal citations omitted)].

---

[3]      The Court of Appeals noted that a root cause of the potential misinterpretation is the fact that the analysis of whether ABA is "experimental" is also part of the many considerations used in making the case-by-case determination of medical necessity. Further, the Court of Appeals also noted that the issue of individual medical necessity was never a question that arose before the District Court.

Ultimately though, because of the risk of erroneous interpretation, the Court of Appeals affirmed the substance of the District Court's declaratory judgment and permanent injunction, while vacating and remanding for modification sections of two paragraphs in each of those documents. *Garrido*, 731 F.3d at 1160-1161.

So, it is absolutely true that the Court of Appeals found issues with the breadth of the wording within the District Court's declaratory judgment and permanent injunction.  It is not true, however, that the issue of that wording was the full scope of the appeal or that AHCA even legally prevailed on an issue with regard to that wording.  As demonstrated above, AHCA very specifically stated its issues on appeal (*see* supra Section I); when those issues and the Court of Appeals decision are compared side by side, it is readily apparent that AHCA's ultimate goals are not confirmed by the Court of Appeals' opinion.

AHCA asserts that "[t]he party seeking appellate attorneys' fees . . . <u>must actually prevail on a legal issue or obtain additional relief from the appeal</u>." [ECF No. 210, p. 2 (emphasis in original) (citing *Jean v. Nelson*, 863 F.2d 759, 770-771 (11th Cir. 1988).]  AHCA appealed on three separate grounds, asserting that the District Court "abused its discretion" (which is the appropriate standard of review) on each one of the raised issues.[4] [ECF No. 213-1, p. 14].  The Court of Appeals summarized its ruling by

---

[4]      In brief, AHCA argued that the District Court (1) abused its discretion in abolishing AHCA's role in determining medical necessity of the treatment; (2) abused its discretion in ordering injunctive relief (eliminating case-by-case medical necessity

clearly stating, contrary to AHCA's three assertions, that "the district court *did not abuse its discretion* in issuing a permanent injunction that overrules AHCA's determination that ABA is experimental (and AHCA's larger determination that ABA is never medically necessary) and requires Medicaid coverage of this treatment." *Garrido*, 731 F.3d at 1160 (emphasis added).  Given this strong wording from the Court of Appeals, it is safe to say that Plaintiffs did *at least partially* prevail on this appeal.

To be sure, the substance of the Court of Appeals' opinion focused primarily on the matter of the breadth of the language in the District Court's declaratory judgment and injunction, going into great detail about how "the injunction's final section is out of step with the district court's analysis and what was actually decided[.]" *Id.*  However, at no point did the Court of Appeals find that the District Court abused its discretion as AHCA asserted in its appellate briefs.  The conclusion was not a finding that the District Court had issued a ruling that violated AHCA's statutory obligation to determine the medical necessity of treatments for Medicaid-eligible patients. To the contrary, it concerned wordsmithing.

---

analysis for ABA treatment) to nonparties without a certified class; and (3) abused its discretion in adopting Plaintiffs' proposed order for relief verbatim. [ECF No. 213-1, p. 14].

AHCA's first two issues on appeal revolve wholly around an erroneous interpretation of the District Court's opinion.[5]   The first issue explicitly claimed the District Court abused its discretion by eliminating the "medically necessary" requirement, while the second issue claimed that, by extension, the elimination of that requirement inappropriately created a whole class of nonparty beneficiaries who could enforce the injunction should AHCA deny a claim based on it not being "medically necessary." [ECF No. 213-1, pp. 24-50].  Plaintiffs, by contrast, argued that the District Court had ruled appropriately (i.e. *not* abused its discretion) and that AHCA's interpretations of the ruling and injunction were mistaken. [ECF No. 213-3, p. 24].[6] While AHCA's arguments on appeal (based on an incorrect interpretation of the District Court's ruling) resulted in *some* superficial alterations to the ruling, it does not therefore follow that *AHCA* was the prevailing party.  The vacate and remand section of the Court of Appeals ruling merely provided clarification (a clarification that Plaintiffs agreed with, it should be noted [*see* ECF No. 213-3, p. 27]), which effectively reworded some paragraphs to better reflect what the District Court meant in its opinion to avoid future misunderstandings about whether there was an intent to eliminate the case-by-

---

[5]      The Court of Appeals never explicitly addressed AHCA's third appellate point, and thus the claims for abuse of discretion concerning it should be considered encompassed within the Court of Appeals' language declaring that there was no abuse of discretion and affirming the District Court's ruling.

[6]      In filings before litigating the appeal, Plaintiffs had urged that any necessary language adjustments to the order and injunction (to more accurately reflect the correct interpretation of the District Court's order) be made. [ECF No. 164, p. 4].

case medical necessity analysis mandated by the Medicaid Act.  Plaintiffs noted from the outset that AHCA was improperly reading the District Court ruling and that there was no abuse of discretion.  They were then forced to bear the expense of the appellate process to ensure that the fundamental relief they sought and received from the District Court was not vacated.

Under 42 U.S.C. § 1988, on appeal, the prevailing party is one who "successfully defend[ed] an attack on the award in his favor." *Fewquay*, 907 F.2d at 1046.  Even if the outcome of that appeal does not result in the original judgment order coming out fully unscathed,[7] the incurring of fees in defense of that judgment still warrants reimbursement (*see Ustrak*, 851 F.2d at 893), while any diminished degree of success for that Plaintiff is a consideration for determining the reasonable amount for that fee. *See Texas State Teacher's Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) ("the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained").

To conclude, the Undersigned recognizes that AHCA's appeal did result in some adjustments to the wording of the initial order and injunction from the District Court.  But these alterations were not the result of the Court of Appeals accepting AHCA's

---

[7]    The Court of Appeals' alterations to the District Court's opinion and injunction were very much superficial. And, as noted above, they were adjustments to language for which Plaintiffs themselves actually agreed.

legal arguments. Instead, the language modifications were made in recognition of AHCA's erroneous interpretation of the District Court's ruling upon which AHCA's arguments were based. Substantively, the Court of Appeals **rejected** AHCA's interpretation of what the District Court had ruled. Instead, the Court of Appeals ultimately accepted the Plaintiffs' interpretation of the lower court ruling, opting to uphold all of the relief granted and to make superficial clarifications of the District Court's language to avoid future misunderstandings. In light of this, it is readily apparent that **Plaintiffs** ultimately were a prevailing party on appeal. The Undersigned will consider the degree of Plaintiffs' success at the appellate level in determining the reasonableness of the award.

     **B.**  <u>Amount of Attorneys' Fees</u>

The analysis of what constitutes "a reasonable attorney's fee as part of the costs" under 42 U.S.C. § 1988 begins with a determination of the "lodestar" figure, which is the product of the number of hours reasonably expended and the reasonable hourly rate for work performed by similarly situated attorneys in the community. *R.L. v. Miami-Dade Cnty. Sch. Bd.*, No. 07–20321, 2013 WL 2157156, at *9 (S.D. Fla. May 17, 2013) (citing *Pennsylvania v. Del. Valley Citizens'Council for Clean Air*, 478 U.S. 546, 565 (1986)). The prevailing party applying for the fees bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citing *Hensley*, 461 U.S. at 437 (1983)).

The Court is itself an expert on the question of the reasonableness of an attorney's hourly rate and I also may use my "own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *see also Crescenzo v. Healthcare Revenue Recovery Grp., LLC*, No. 11-60384-CIV, 2012 WL 291431, at *2 (S.D. Fla. Jan. 31, 2012).

When determining the hourly fee, the Court must "step[ ] into the shoes of the reasonable, paying client, who wishes to pay the **least amount necessary** to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 184 (2d Cir. 2008) (emphasis added); *Tiara Condo Ass'n, Inc. v. Marsh USA, Inc.,* 697 F. Supp. 2d 1349, 1364 (S.D. Fla. 2010) (internal citations omitted). To be sure, there are South Florida law firms which charge the same hourly fees as the Plaintiffs' attorneys. And there are South Florida firms which may at times charge even higher hourly rates.  But there are also similarly experienced and competent law firms which charge *lower* hourly rates, and those are the rates to be used when calculating an hourly fees award. *See Procaps S.A. v. Patheon, Inc.*, No. 12-24356, 2013 WL 6238647, at *14 (S.D. Fla. Dec. 3, 2013).

Plaintiffs request attorneys' fees for the work of five separate attorneys on the appeal, seeking $268,890 for 599.2 hours of work. [ECF No. 213-5].  Plaintiffs represented that their attorneys incurred 898.5 hours but they have now deleted the

hours for time spent addressing AHCA's first issue on appeal (a reduction of approximately one third of total hours spent). [ECF No. 209, pp. 9-10].   The Undersigned will first address the reasonableness of the rates for each individual attorney and then separately assess the reasonableness of the hours expended by the team of attorneys on the appeal.  The Court will then determine the reasonableness of the fees in light of Plaintiffs' degree of success.

**1.** *Reasonable Hourly Rates and Hours Expended*

Attorney Miriam Harmatz seeks a rate of $500/hour for her work on the appeal. [ECF No. 209-1, p. 1].  AHCA contends that the reasonable rate for an attorney of Ms. Harmatz's experience in the South Florida region is $385/hour. [ECF No. 210, p. 5]. AHCA bases this suggested rate upon a single case that awarded an "experienced" civil rights litigator that fee in this jurisdiction. [*Id.* (citing *R.L.*, 2013 WL 2157156, at *9)].  But the case cited by AHCA does not detail the specific background of the attorney awarded that fee beyond vague statements that he has an impressive resume.

On the other hand, Plaintiffs note that in a civil rights matter against AHCA nearly ten years ago, attorney Harmatz was awarded a fee at the uncontested rate of $400/hour. [ECF No. 213, p. 7].  The requested $500/hour rate in this case represents an annual increase of less than 3% since that award.  In the time that elapsed since that $400/hour rate was awarded, attorney Harmatz has continued to litigate successfully [ECF No. 209-2].  But the only local cases Plaintiffs cite to justify the requested rate are

from dissimilar matters: a corporate litigation matter from seven years ago (*Topp, Inc. v. United America Corp.*, No. 05-21698, 2007 WL 2155604, at *3 (S.D. Fla. July 25, 2007)) and a consumer class action matter (*Golf Clubs Away v. Hostway Corp.*, No. 11–62326, 2012 WL 2912709, at *2-4 (S.D. Fla. July 16, 2012). [ECF No. 213, p. 7].

While it is true that legal aid attorneys' rates should be calculated at rates comparable to those of private attorneys in the community with comparable experience (*Blum v. Stenson*, 465 U.S. 886, 892-96 (1984)), it must be noted that the facts and issues of the cases presented by Plaintiffs are dissimilar to those found in this litigation.  As Plaintiffs bear the burden regarding reasonableness of rates, the scant evidence presented of similar rates being awarded in similar cases in this jurisdiction is a significant factor for the Court to consider.  The Undersigned finds that attorney Harmatz's requested rate is slightly above the high end of the market for similar services from similarly experienced attorneys.  Taking into account the totality of the evidence, the Court finds $475/hour to be reasonable for attorney Harmatz's compensation.

Attorney Jane Perkins seeks a rate of $525/hour. [ECF No. 209-1, p. 12].  AHCA counters with the same argument it used in opposing attorney Harmatz's requested rate -- that the prevailing market rate for an attorney of Ms. Perkins' caliber in similar circumstances is also $385/hour. [ECF No. 210, p. 5].  Attorney Perkins was awarded an uncontested rate of $375/hour in 2005 in the very same case as Ms. Harmatz against

AHCA. [ECF No. 213, p. 7].   Similarly to their submission for attorney Harmatz, Plaintiffs offer little in the way of comparable rates being awarded in this jurisdiction, beyond the same dissimilar cases, as well as a "Lawyer Compensation Survey" published in a local business periodical that offers vague impressions of what some attorneys in the market are billing. That survey expressly states it "is not a comprehensive list because most firms do not release their attorneys' rates." [ECF No. 209-3 (quoting Susan Postlewaite, *Lawyer Compensation Survey: Firms Take Baby Steps in Raising Rates*, DAILY BUSINESS REVIEW, Oct. 4, 2013)].   Given that attorney Perkins' and attorney Harmatz have similar experience and backgrounds, and that in the past, attorney Perkins was awarded $25 less per hour than attorney Harmatz, the Court concludes that $450/hour is reasonable for attorney Perkins' services in this matter.

The parties, particularly Plaintiffs, have offered far-less guidance to the Court concerning the appropriate hourly rates for the remaining three attorneys.   Plaintiffs offer only the vague survey of local fees [*Id.*] (plus the attorneys' affidavits and resumes) and AHCA generally refers to several cases where it is unclear which rates are supposed to relate to which attorney[8] [ECF No. 210, p. 5].

Attorney Monica Vigues-Pitan seeks a rate of $360/hour. [ECF No. 209-1, p. 17]. AHCA counters that attorney Vigues-Pitan should be paid at a rate of only $300/hour.

---

[8]      AHCA merely alludes to three cases to support its point that the prevailing rates in this market range from $385/hour to $185/hour, but it provides very little detail on the actual experience of the attorneys in the cited cases; this is particularly true for the attorney in the middle of the spectrum here: Ms. Monica Vigues-Pitan.

[ECF No. 210, p. 5].  In this Court's experience, a reasonable rate for counsel of attorney Vigues-Pitan's experience is $330/hour.

Attorney Betsy Havens seeks a rate of $275/hour for her work on the appeal. [ECF No. 209-1, p. 20].  AHCA argues that attorney Havens should be paid at a rate of only $185/hour. [ECF No. 210, p. 5].   Plaintiffs have not offered much support to justify the $275/hour rate.   Given the evidence presented and the Undersigned's own experience, the Court concludes that $200/hour is reasonable for attorney Havens.

Attorney Margaret Kosyk seeks a rate of $200/hour for her work on the appeal. [ECF No. 209-1, p. 24].  AHCA contends that the reasonable rate for her services is just $175/hour. [ECF No. 210, p. 5].   Once again, given the lack of justification for the proposed rate and the fact that AHCA has pointed to a case indicating reasonable rates of $175-85/hour for junior-level associates like attorney Kosyk [ECF No. 210, p. 5 (citing *R.L.*, 2013 WL 2157156, at *9)], the Court, in its discretion, finds $185/hour to be reasonable.

Plaintiffs are seeking compensation for 599.2 billed hours on the appeal. [ECF No. 213-5].   In evaluating the reasonableness of hours expended, the Undersigned should exclude from the fees award compensation for hours that are "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434).  The Undersigned may determine a reasonable award based on his own experience. *Id.* at 1303.

18

Here, as set out in the motion and attached time sheets, Plaintiffs seek 356.6 hours for attorney Harmatz, 85.9 hours for attorney Perkins, 63.7 hours for attorney Vigues-Pitan, 52.8 hours for attorney Havens, and 40.2 hours for attorney Kosyk. [ECF No. 213-5]. AHCA argues that the Court should reduce any fee award by **60%** based on its analysis of the time records. [ECF No. 210, p. 10].

AHCA contends that such a large reduction is necessary because:  "(1) 5 attorneys created unnecessary and duplicative work on the appeal; (2) approximately 60% of the time spent by lead counsel, Ms. Harmatz, was excessive and the time entries are insufficient; (3) approximately 50% of time entries by all attorneys are insufficient; (4) the time spent on the Answer Brief, the Oral Argument, and the Fee Application was excessive; and (5) much of the Application, motions filed, and Answer Brief did not address the actual issues on appeal."

While Plaintiffs have already reduced the number of billed hours by approximately one third [ECF No. 209, pp. 9-10], the Court agrees with AHCA that at least some further reduction is necessary, as close analysis of the billing records indicate several examples of excessive, redundant, unnecessary or inefficient work.

As attorney Harmatz was the lead attorney on Plaintiffs' case and thus billed the lion's share of the hours, the Court will look first to her hours to determine whether they reflect excessive, redundant or inefficient entries.

Attorney Harmatz is a very experienced legal aid attorney who has worked for almost the last twenty years as a "Senior Health Law Attorney." [ECF No. 209-2, p. 17].

19

Yet, in this matter, she spent approximately 80 hours to prepare for a thirty minute oral argument alone, including five moot court sessions with attorney Perkins. [ECF No. 210, p. 8].  Given attorney Harmatz's many years of experience in the field, billing for that many hours and engaging in so many moot court sessions with another very experienced attorney is inefficient and many of the hours are therefore unnecessary. Plaintiffs used the services of both of their most experienced (and expensive) counsel to prepare for oral argument and the Court considers a downward adjustment to be appropriate.

Attorney Harmatz also billed 154 hours for her work on a single Answer Brief alone. [*Id.*].  To be sure, some of the issues presented on appeal were somewhat nuanced, in that there was a District Court order and injunction (as explained above) that offered the potential for misunderstanding (and, in fact, led to AHCA arguing against the decision based on that misunderstanding). But the issues presented on appeal by AHCA were not so complex that an experienced health care litigator like attorney Harmatz should alone find it necessary to spend weeks' worth of attorney time drafting a single brief (not to mention the work contributed by the other attorneys on this same brief).  An attorney with counsel's familiarity with the issues in the case and experience in the field of health care law should be capable of drafting a brief in

significantly less time, especially with the assistance of other lawyers.[9]  Therefore, the Undersigned finds that a reduction in billed time for this work is appropriate, as well.

Additionally, once the appellate litigation was complete, attorney Harmatz spent another 45 hours preparing the application for reimbursement of attorneys' fees. [ECF No. 210-1, pp. 18-19].  The court finds that this, too, exceeds what an efficient attorney would have billed and therefore would recommend further reduction of time billed.

As AHCA also points out, Plaintiffs were inappropriately billing for time spent in connection with amicus briefs supporting their position, as well as for work done on issues not raised on appeal or for documents that were never filed. [ECF No. 210, pp. 9-10].  In their reply, Plaintiffs already reduced their total time by nearly seven hours for time spent on amicus briefs, court admission and the medical necessity argument. [ECF No. 213-5).  While that reduction was appropriate, the Court recognizes that there were numerous more hours ripe for reduction in this area, particularly since the Undersigned can identify *at least 16 hours* that the various counsel for Plaintiffs spent in association with amicus briefs alone.  This too is grounds for further reduction in the total award.

---

[9]      Assume that a private attorney bills 1800 hours per year and takes two weeks of vacation. Using this hypothetical, the attorney bills 36 hours per week.  Therefore, 154 hours of work translates into 4.33 weeks of work, to the exclusion of all other work.  Thus, Attorney Harmatz's hours equal working more than a month on one brief, to the exclusion of all other work.  But other lawyers worked on the brief.  Attorney Perkins worked 28.1 hours on the brief, Attorney Havens worked 36.4 hours on it and Attorney Vigues-Pitan spent 41 hours.  Therefore, the attorneys collectively spent **259.4 hours on the one brief.**

Rather than make line-by-line reductions in hours for a case where excessive time was billed, a court "may engage in 'an across-the-board cut' so long as it provides adequate explanation for the decrease." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). In the instant matter, the issues raised above concerning inefficient use of attorney time and excessive hours billed for brief and memo drafting, oral argument preparation, and for work on amicus briefs and documents that were never filed, point to the need for an across-the board cut in the fee awarded. The Undersigned recognizes that Plaintiffs already reduced their hours by one third at the outset, as well as by an additional seven hours when first faced with AHCA's objections. But Plaintiffs should not have included those hours in the first place, so they do not receive a pass on future inefficient billing. Given the noted illustrations of inefficient, duplicative or excessive billing in the remaining billed hours, the Court would recommend a further 15% reduction in the total fee awarded.

In selecting a 15% discount factor, the Undersigned considered the efficiency-enhancing steps outlined in Attorney Harmatz's affidavit. For example, she explained that Attorneys Havens and Vigues-Pitan frequently participated in telephone calls but did not bill for that time. Moreover, the affidavit also notes that they did not bill for time spent researching and reviewing items related to appellate procedure or for much of the time spent reviewing drafts of the brief. And Attorney Harmatz pointed out that

these two lawyers did not bill for all their participation in, and preparation for, several moot courts.

**2.** *Degree of Success*

"Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award under *Hensley*[.]" *Garland*, 489 U.S. at 793 (quoting *Hensley*, 461 U.S. at 793).   In the instant matter, as was explained at length above, Plaintiffs' arguments on appeal were readily accepted by the Court of Appeals.   In fact, no argument put forth by Plaintiffs on appeal was actually rejected by that Court.   Rather, AHCA's erroneous interpretation of the District Court's order resulted in Plaintiffs being forced to carry on the protracted litigation at the appellate level.

As was noted above, Plaintiffs, at various times prior to appeal, were willing to work with AHCA to have the wording of the District Court's order and injunction adjusted in a manner consistent with what the Court of Appeals ultimately decided [*see e.g.* ECF No. 164, p. 4], but AHCA insisted instead on pursuing an appeal with legal arguments based upon a faulty understanding of the District Court's ruling.   And while the pursuit of this appeal based on an erroneous misinterpretation did result in the Court of Appeals adjusting language to avoid future mistaken readings, it did not result in any actual change to the **substance** of the District Court's ruling to the detriment of Plaintiffs or the benefit of AHCA.   Given this result, it is clear to the Undersigned that

Plaintiffs' "degree of success" on appeal was complete. The appellate court's tweaking of the language should not result in any further reduction of the fee award.

## III. CONCLUSION

For the reasons stated above, the Undersigned **respectfully recommends** that Plaintiffs Application for Attorneys' Fees on Appeal be **granted in part** and that they be awarded **$209,999** in fees, $58,891 less than requested.

## IV. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), the Parties have **14** days after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the District Court. Each Party may file a response to the other Party's objection within **14** days of the objection. The objecting Party may file a reply within **seven** days. Failure to file timely objections shall bar the Parties from a de novo determination by the District Court of an issue covered in this Report and Recommendations and bar the Parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, this 17th day of September, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

24

**<u>Copies furnished to</u>:**
The Honorable Joan A. Lenard
All Counsel of Record